**Reversed and Remanded and Opinion filed March 27, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

———————————

## NO. 14-11-00268-CV
———————————

### AARON WIESE, Appellant

### V.

### HEATHLAKE COMMUNITY ASSOCIATION, INC., Appellee

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2009-43649**

## O P I N I O N

A property owners' association sued a homeowner to enforce a restrictive covenant. The trial court granted injunctive relief and statutory attorney's fees. In 16 issues, the homeowner challenges the trial court's interpretation of the restrictive covenant, the sufficiency of the evidence to support the trial court's findings of fact, and the trial court's award of attorney's fees. We reverse and remand.

## BACKGROUND

This case focuses on Aaron Wiese's boat, a large model Wellcraft. When resting on its trailer, the boat is nearly 12 feet tall.

Wiese resides in West Harris County in a subdivision governed by a properly recorded Declaration of Covenants, Conditions, and Restrictions. The Declaration establishes Heathlake Community Association, Inc. as the property owners' association charged with maintaining the subdivision and enforcing its restrictive covenants.

The Declaration dictates certain standards for property ownership within the community. The standard applicable in this case is one written specifically on the subject of boats, and it states as follows:

> Section 10. <u>Storage of Automobiles, Boats Trailers and Other Vehicles</u>. No boat trailers, boats, travel trailers, inoperative automobiles, campers, or vehicles of any kind shall be semipermanently or permanently stored in the public street right-of-way or on driveways. Storage of such items and vehicles must be screened from public view, either within the garage or behind a fence which encloses the rear of the Lot.

After Wiese moved into the neighborhood, observers noted that he frequently parked his boat in public view in the driveway or on the street. Believing this storage to be in violation of the Declaration, Heathlake communicated with Wiese directly to address the complaints. When repeated attempts to resolve the issue failed, Heathlake filed this suit seeking a permanent injunction and other statutory penalties.

Heathlake proffered evidence at trial showing that Wiese's storage of the boat had become a recurring issue within the community. In an eight-year span, Wiese received at least nine notices advising him that he was storing his boat in a proscribed manner. The notices normally afforded Wiese an opportunity to cure the defect, generally within ten or fifteen days from the date of receipt. Wiese testified that he removed the boat within the time allotted by each notice. However, once the violation had been cured, the evidence showed that the boat inevitably returned to Wiese's property and remained parked in public view for extended periods of time.

Email correspondence from one neighbor documented the duration of this storage. The neighbor indicated that on one occasion, Wiese had been storing his boat in his

2

driveway "for six weeks plus." The neighbor later complained that the boat was parked along the street for an entire week in June 2009, except Saturday and Sunday. The neighbor also reported that it was on the street for "over a week" in July 2009.

A member of Heathlake's Architectural Control Committee also testified about his encounters with the boat. The committee member did not live on Wiese's street, but he inspected the property himself in the summer of 2006 following complaints from other residents. The committee member found that the boat was stored continuously in Wiese's driveway for four consecutive days in August and for five consecutive days in September. The pattern demonstrated that "the boat was stored every day during the week to be used occasionally on weekends."

Wiese testified that he did not store the boat at his house. He admitted that "on occasion" he had kept the boat at his home for several days at a time, but he indicated that this storage was only temporary. When it did happen, Wiese said he was preparing to take the boat into the shop for maintenance or was waiting for a part to be delivered. When not in use, Wiese testified that the boat was actually stored at a warehouse facility he operated near downtown Houston.

The trial court found that Wiese had violated the Declaration and that Heathlake was entitled to a permanent injunction. Among its findings of fact, the trial court determined that Wiese violated the restrictive covenant by "repeatedly storing a boat on the Property without screening such boat from public view" and by "repeatedly semi-permanently storing a boat in the public street right of way and on the driveway of the Property." The court also found that Wiese's manner of keeping the boat constituted a nuisance within the community and that Wiese was likely to violate the Declaration again. The court then entered a permanent injunction, ordering Wiese to desist and refrain from keeping his boat unscreened from public view on his property for any period in excess of 24 consecutive hours.

**ISSUES PRESENTED**

Wiese raises 16 issues on appeal. He challenges the sufficiency of the evidence to support the trial court's findings of fact, the trial court's various conclusions of law, Heathlake's entitlement to attorney's fees, Heathlake's interpretation of the Declaration, and the trial court's decision to enter the permanent injunction. We begin by examining the permanent injunction and the conclusions of law on which it is based.

**ANALYSIS**

We review a trial court's decision to grant or deny a permanent injunction for an abuse of discretion. *Meehl v. Wise*, 285 S.W.3d 561, 565 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Because the trial court has no discretion in determining the applicable law, the trial court also abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003).

To obtain injunctive relief, a party must ordinarily show (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). When the basis for suit is the enforcement of a deed restriction, instead of showing proof of irreparable injury, the party seeking relief need only demonstrate that the defendant intends to do an act that would breach the restrictive covenant. *Id.*

Injunctions are not intended to grant relief for past actionable wrongs or to prevent the commission of wrongs not imminently threatened. *Tex. Emp't Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex. Civ. App.—El Paso 1976, no writ). Generally, the purpose of injunctive relief is to halt wrongful acts that are either threatened or in the course of

accomplishment. *Id.* A party seeking an injunction must be specific in pleading the type of relief sought because courts are without authority to grant relief beyond what is requested. *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 221 (Tex. App.—Dallas 2005, no pet.).

Once granted, an injunction must be specific in its terms to be enforceable, describing in clear and precise detail the acts sought to be restrained. *See* Tex. R. Civ. P. 683. It should be broad enough to prevent subsequent violations of those already committed, but not so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights. *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.).

Heathlake pleaded for injunctive relief and requested an order enjoining Wiese from storing his boat on a permanent or semi-permanent basis. The trial court concluded as a matter of law that a boat stored in excess of 24 hours is being stored "semipermanently" in violation of the Declaration. The trial court's injunction forbids Wiese "from having a boat that is not screened from public view . . . in excess of twenty four consecutive hours."

Wiese argues that the trial court abused its discretion because the injunction's language exceeds the scope of the pleading, the evidence, and the terms of the Declaration. He makes two primary arguments. He first contends that the Declaration is ambiguous because it simultaneously prohibits and allows the storage of boats. He next contends that the trial court's 24-hour rule is unsupported by the record because Heathlake proffered no evidence concerning the meaning of "semipermanently." We examine each argument in turn.

Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). When construing a restrictive covenant, our primary goal is to ascertain and give effect to the intent of its drafters, using the language of the instrument as our guide. *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We examine the

covenant as a whole in light of the circumstances present when it was written, affording words and phrases their commonly accepted meanings. *Pilarcik*, 966 S.W.2d at 478; *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657–58 (Tex. 1987). We review the trial court's interpretation of a restrictive covenant *de novo*. *Rakowski v. Comm. to Protect Clear Creek Village Homeowners' Rights*, 252 S.W.3d 673, 676 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (plurality opinion); *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Whether a restrictive covenant is ambiguous is a question of law for the court to decide. *Pilarcik*, 966 S.W.2d at 478; *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.*, 23 S.W.3d 398, 402 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). A covenant is unambiguous if it can be given a definite or certain legal meaning, consistent with the appropriate rules of construction. *Air Park-Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 909 (Tex. App.—Dallas 2003, no pet.). By contrast, a covenant is ambiguous if, after applying the same rules of construction, its terms are susceptible to more than one reasonable interpretation. *Pilarcik*; 966 S.W.2d at 478. A covenant is not ambiguous simply because the parties disagree over its interpretation. *Air Park-Dallas Zoning Comm.*, 109 S.W.3d at 909.

## A.    The Covenant Is Not Internally Inconsistent

Wiese first argues that the covenant creates an irreconcilable conflict. He contends that the covenant's first sentence absolutely prohibits all storage because it states that "no . . . boats . . . shall be semipermanently or permanently stored in the public street right-of-way or on driveways." Wiese contends this prohibition is inconsistent with the second sentence, which permits a boat to be stored if it is "screened from public view, either within the garage or behind a fence which encloses the rear of the Lot."

There is no conflict between these two sentences. The first provision bars the storage of boats on a permanent or semi-permanent basis, but it does so based on a geographic limitation applying only to streets and driveways. No part of the prohibition

6

can be read to encompass garages or areas enclosed by a fence. Because the sentences are tailored to distinguish between separate areas, the covenant's restriction may be given a definite legal meaning. It is not ambiguous.

## B. The 24-hour Rule

In his next argument, Wiese contends that the injunction's 24-hour rule is unsupported by the Declaration. Wiese insists that this rule cannot be enforced because the Declaration neither defines the term "semipermanently" nor contains a provision expressly restricting homeowners from storing their boats unscreened for more than 24 consecutive hours.

Heathlake argues that the injunction comports with the Declaration because, even without explicit definitions or provisions, the covenant always has been understood to bar the storage of boats for more than 24 consecutive hours. In support of this argument, Heathlake relies on its own history of enforcement practices. A member of the Architectural Control Committee testified at trial that Heathlake has been enforcing a 24-hour rule for more than two decades. Past and current officers of the Heathlake board agreed that the 24-hour rule was a reasonable interpretation of the covenant because it afforded homeowners "a practical period of time for someone to use a boat in a normal way then get it out of their driveway or street." Heathlake also produced evidence that its board members had been developing official interpretations of the Declaration. The evidence showed that the 24-hour rule was included in one of those proposed interpretations, but these interpretations were not formally ratified and published for the benefit of homeowners.

### 1. Additional rules of construction: The common law and the Texas Property Code

Covenants restricting the free use of land are not favored at common law, but they will be enforced if clearly worded and confined to a lawful purpose. *Wilmoth*, 734 S.W.2d at 657. The common law holds that if any doubts arise from the terms of a covenant, such

doubts must be resolved in favor of the free and unrestricted use of land. *Id.* Courts may not enlarge, extend, stretch, or change the words of the restriction by construction. *Id.* If the covenant contains any ambiguity, it must be strictly construed against the party seeking to enforce it. *Id.*

The legislature amended the Texas Property Code in 1987 to provide that all restrictive covenants in instruments governing certain residential developments, regardless of the date on which they were created, must be liberally construed to give effect to their purpose and intent. *See* Act of May 23, 1987, 70th Leg., R.S., ch. 712, § 1, 1987 Tex. Gen. Laws 2585, 2585 (current version at Tex. Prop. Code Ann. §§ 202.002(a), 202.003(a) (Vernon 2007)).

Texas appellate courts have not been consistent in their discussion or application of these two rules of construction, as the First Court of Appeals has already observed. *See Uptegraph*, 312 S.W.3d at 926–28; *Gennedy*, 125 S.W.3d at 693–95. Some courts, including our own, have held or suggested that the Property Code's liberal construction rule has superseded the common law's approach to strictly construing restrictive covenants.[1] By contrast, others have held that there is no discernible conflict between the two rules.[2] Among these courts, there persists a separate disagreement as to how the rules should be applied. Some courts have continued applying the common law rule without

---

[1] *See Village of Pheasant Run Homeowners Ass'n, Inc. v. Kastor*, 47 S.W.3d 747, 750–51 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Benard v. Humble*, 990 S.W.2d 929, 930–31 (Tex. App.—Beaumont 1999, pet. denied); *Highlands Mgmt. Co., Inc. v. First Interstate Bank of Tex., N.A.*, 956 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *Candlelight Hills Civic Ass'n, Inc. v. Goodwin*, 763 S.W.2d 474, 476–77, 480 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

[2] *See Reagan Nat'l Adver. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 493 n.2 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.); *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 309 (Tex. App.—Fort Worth 2001, no pet.); *Munson v. Milton*, 948 S.W.2d 813, 818 n.1 (Tex. App.—San Antonio 1997, writ denied) (Duncan, J., dissenting); *Simon Prop. Grp. (Tex.) L.P. v. May Dep't Stores Co.*, 943 S.W.2d 64, 71 (Tex. App.—Corpus Christi 1997, no pet.); *Ashcreek Homeowner's Ass'n, Inc. v. Smith*, 902 S.W.2d 586, 588–89 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Crispin v. Paragon Homes, Inc.*, 888 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

attempting to reconcile it with the Property Code.[3] Other courts have applied the common law rule only when confronted with an ambiguity, but these courts first apply the Property Code's liberal construction rule to determine if such an ambiguity exists.[4]

Other courts, including ours, have continued to apply the common law rule without any reference to the Property Code.[5] In similar fashion, some courts have applied the Property Code without mentioning the common law standard.[6]

The Texas Supreme Court has noted, but has not addressed, the potential tension between these two methods of construction. *See Pilarcik*, 966 S.W.2d at 478 (noting, but not deciding, party's argument that the Property Code supplanted the common law rule). We need not confront this tension to resolve the case presently before us. Under either approach, the covenant at issue is incapable of supporting the 24-hour rule adopted in the injunction.

Under the common law approach, the covenant fails insofar as it proscribes the open storage of boats "semipermanently." The term "semipermanently" is nowhere defined in the Declaration, and its ordinary meaning has no certain limits. One dictionary defines the

---

[3] *See Reagan Nat'l Adver.*, 96 S.W.3d at 493 n.2; *Dyegard*, 39 S.W.3d at 309; *Simon Prop. Grp.*, 943 S.W.2d at 71; *Crispin*, 888 S.W.2d at 81.

[4] *See Quinn v. Harris*, No. 03-98-00117-CV, 1999 WL 125470, at *2 n.3 (Tex. App.—Austin Mar. 11, 1999, pet. denied) (not designated for publication) (construing *Munson*, 948 S.W.2d at 816).

[5] *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 288 (Tex. App.—San Antonio 1999, pet. denied); *Kulkarni v. Braeburn Valley W. Civic Ass'n, Inc.*, 880 S.W.2d 277, 278 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Hickory Ridge Homeowners Ass'n v. Sawtelle*, No. 14-94-00300-CV, 1995 WL 676861, at *2–3 (Tex. App.—Houston [14th Dist.] Aug. 31, 1995, writ denied) (not designated for publication) (observing that in some other states, "[u]nlike Texas," covenants are construed liberally in favor of the party seeking enforcement).

[6] *Lee v. Perez*, 120 S.W.3d 463, 466 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Truong v. City of Houston*, 99 S.W.3d 204, 214 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Am. Golf Corp. v. Colburn*, 65 S.W.3d 277, 279–80 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.*, 23 S.W.3d 398, 402 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *Bank United v. Greenway Improvement Ass'n*, 6 S.W.3d 705, 707–08 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Gettysburg Homeowners Ass'n, Inc. v. Olsen*, 768 S.W.2d 369, 372 (Tex. App.—Houston [14th Dist.] 1989, no writ).

word "semipermanent" as "permanent in some respects: partly permanent" and "lasting for an indefinite time: virtually permanent." Webster's Third New International Dictionary 2064 (Philip Babcock Gove ed., 1993). Another defines it as "lasting or intended to last for a long time but not permanent." Webster's Ninth New Collegiate Dictionary 1070 (Frederick C. Mish et al. eds., 1985). The term is amorphous, having no authoritative definition that can be measured in precise units of time. Without a definite meaning, the covenant must be strictly construed against Heathlake and in favor of Wiese. *See Wilmoth*, 734 S.W.2d at 657. [7]

The outcome is the same even when the covenant is liberally construed. After reading the covenant as a whole, the intent of the drafters appears to be mainly aesthetic. The restriction applies to boats, large trailers, and other vehicles not usually found in front of a standard suburban home. The covenant aims to reduce visual clutter by limiting the presence of these objects; this preserves a cleaner image of the community and enables all residents to fully enjoy their individual properties. At trial, members of Heathlake's board also testified that the covenant can advance certain safety concerns, such as preventing the opportunity for theft and other property crimes.

Even with this backdrop, a liberal construction of the covenant does not answer the difficult question of how much time must elapse before storage becomes semi-permanent. We are confident that, by any measure, boat storage in excess of "six weeks plus" would violate the Declaration. This lengthy duration would be directly at odds with the drafters' intent of minimizing unsightly objects.

The limits are not so obvious, however, when we consider more transitory periods of storage. Heathlake insists that the line should be drawn at 24 hours, but the Declaration

---

[7] The meaning of "semipermanently" is a legal question, which is not ordinarily an appropriate subject for the testimony of lay witnesses. Even so, we note that testimony from one of Heathlake's witnesses underscores our concerns with the construction of this word. Testifying as a member of Heathlake's Architectural Control Committee, this witness observed that the covenant has "no definite time frame in there for compliance" and "it is not definitive in all respects."

contains many terms of temporal significance and none suggests a limit so narrow. For instance, the Declaration forbids structures of a "temporary" character, such as mobile homes, tents, and outbuildings. Temporary buildings are permitted for limited use during construction periods, but the Declaration provides that such structures must be removed "immediately" after completion of construction. In addition to provisions regarding the permanent and semi-permanent storage of boats, the Declaration dictates that lots must be maintained "at all times." If an owner fails to cut his grass or keep his property within community standards, the Declaration authorizes others to enter his lot and do anything necessary to bring the property into compliance, provided "ten (10) days' written notice" is given. When examined as a whole, the Declaration contains language suggesting a continuum of sorts, with "immediately" on one end and "permanently" and "at all times" on the other. It is unclear precisely where "semipermanently" falls along that spectrum.

This court has held previously that when a covenant is unclear, evidence outside the four corners of the document may be considered when divining the intent of the drafters. *See Settlers Village Cmty. Improvement Ass'n, Inc. v. Settlers Village 5.6, Ltd.*, 828 S.W.2d 182, 185 (Tex. App.—Houston [14th Dist.] 1992, no writ) (summary judgment was improper where covenant contained ambiguous term and parol evidence was needed to determine intent of the parties); *see also Baker v. Henderson*, 153 S.W.2d 465, 470–71 (Tex. 1941) (construing covenant in favor of conveyance despite it being "certainly ambiguous"); *Highlands Mgmt. Co., Inc. v. First Interstate Bank of Tex., N.A.*, 956 S.W.2d 749, 756 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (stating that extrinsic evidence was not admissible where there was no ambiguity); *Candlelight Hills Civic Ass'n, Inc. v. Goodwin*, 763 S.W.2d 474, 477 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (same). In this case, the drafters of the Declaration were not called to testify about the meaning of "semipermanently," nor were the original members of the Architectural Control Committee. Heathlake only produced evidence of how current and recent board members had construed the covenant. There was no evidence at all that the covenant was

11

drafted with the deliberate intent of proscribing the storage of boats for periods in excess of 24 consecutive hours.

Heathlake's rigid interpretation of the covenant departs in some ways from other evidence suggesting that the covenant may allow for more permissive periods of storage. Several witnesses from Heathlake's board testified that the 24-hour rule was not a final or official reading of the covenant. These witnesses recognized that the 24-hour rule was instead a "work in progress."

On this record, the trial court had no basis for concluding that the drafters intended through this covenant to restrict Wiese from storing his boat for more than 24 consecutive hours. The term "semipermanently" is not defined in the Declaration, and we do not believe it is capable of supporting a 24-hour definition as a matter of law. Reasonable minds have differed already as to how a restriction against semi-permanent storage should be implemented. From our research, we know that some communities in the Houston area have determined — in express terms — that a boat is semi-permanently stored if kept for more than 48 hours. *See Sobsey v. Shannon Forest Homeowners Ass'n*, No. 01-96-00206-CV, 1997 WL 381387, at *2 (Tex. App.—Houston [1st Dist.] July 10, 1997, writ denied) (not designated for publication) (quoting similar restrictive covenant that prohibited the "[p]ermanent and semi-permanent" storage of boats and other items for more than 48 hours). Heathlake also produced one witness who testified that other communities have taken the position "that this type of restriction should be looked at from the standpoint of a three-day period."

The trial court erred by concluding as a matter of law that a boat is semi-permanently stored when parked unscreened for more than 24 consecutive hours. Because this erroneous conclusion provided the basis for the permanent injunction, the trial court abused its discretion by ordering Wiese to refrain from storing his boat in the manner described.

12

### 2. Heathlake's interpretation is not entitled to any presumption of reasonableness

Even though the Declaration is silent as to the 24-hour rule, Heathlake argues that we should affirm the trial court's judgment because Wiese has not demonstrated that Heathlake's interpretation of the covenant is arbitrary, capricious, or discriminatory. Heathlake accordingly believes its interpretation is entitled to a presumption of reasonableness, citing as authority section 202.004 of the Texas Property Code.

Section 202.004 provides that "[a]n exercise of discretionary authority by a property owners' association . . . concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." Tex. Prop. Code Ann. § 202.004(a). The Property Code does not define the scope of an association's discretionary authority. Other courts have considered this provision when reviewing issues bearing on an association's decision to grant or deny a homeowner's request for a variance permit. *See, e.g.*, *Leake v. Campbell*, 352 S.W.3d 180, 183, 190 (Tex. App.—Fort Worth 2011, no pet.); *Uptegraph*, 312 S.W.3d at 925, 932–35; *see also La Ventana Ranch Owners' Ass'n, Inc. v. Davis*, No. 03-09-00452, 2011 WL 2162886, at *11–12 (Tex. App.—Austin June 3, 2011, no pet.). If we assume for argument's sake that this provision also applies to an association's interpretation of its covenants, then Wiese must show that the interpretation is arbitrary, capricious, or discriminatory. We conclude that Heathlake's interpretation is arbitrary on its face when evaluated in light of the Declaration's language as a whole. Therefore, even if a presumption of reasonableness applies in this case, it was overcome.

### 3. Nuisance theory

Heathlake also argues that the injunction can be supported by a separate covenant in the Declaration that restricts certain uses of property that may be considered a nuisance. The terms of that covenant are as follows:

> Section 8. <u>Prohibition of Trade and Offensive Activities</u>. No activity, whether for profit or not, shall be carried on on any Lot which is not related to single family residential purposes. No noxious or offensive activity of any sort shall be permitted nor shall anything be done on any Lot which may be or become an annoyance or a nuisance to the neighborhood.

Heathlake produced some evidence at trial that the boat constituted a nuisance, namely the complaints of residents. Based on that evidence, the trial court concluded as a matter of law that "[a]n unscreened boat . . . is a nuisance or annoyance to the neighborhood."

We reject Heathlake's argument that the injunction can be sustained on this independent basis. The trial court's conclusion is not qualified by any benchmark of time, and Heathlake cites no authority on appeal showing that an unscreened boat becomes an annoyance or nuisance when stored in excess of 24 consecutive hours. Considering that some communities permit homeowners to store their boats for as much as 48 hours without interruption, we decline to hold that the indefinite covenants of this Declaration require the removal of boats sooner. *See Sobsey*, 1997 WL 381387, at *2.

## CONCLUSION

The Declaration contains undefined terms, and the trial court abused its discretion by entering a permanent injunction based on those terms. Without reaching Wiese's remaining issues on appeal, we reverse the judgment of the trial court and remand for that court to consider Heathlake's request for statutory penalties. *See* Tex. Prop. Code Ann. § 202.004(c).

/s/     William J. Boyce
          Justice

Panel consists of Justices Boyce, Jamison, and McCally.