**Affirmed and Memorandum Opinion filed March 13, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00173-CV

---

## JOSEPH ANTHONY THOMAS, Appellant

## V.

## LAKE COVE COMMUNITY ASSOCIATION, INC., Appellee

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2011-69824**

---

## MEMORANDUM OPINION

A homeowner was sued for keeping two pit bulls in violation of a restrictive covenant. The trial court issued a permanent injunction, enjoining the homeowner from keeping any pit bull at his home or within the limits of his subdivision. The court also awarded attorney's fees to the property owners' association for having to enforce the restrictive covenant. The homeowner asserts two issues on appeal, challenging both the injunction and the award of attorney's fees. We affirm the trial court's judgment.

# BACKGROUND

Joseph Thomas, the homeowner in this case, resides in Lake Cove Section 1, a subdivision located in the City of Seabrook. The subdivision is governed by a Declaration of Covenants, Conditions, and Restrictions. One section of the Declaration prohibits residents from conducting any "noxious or offensive activity . . . which may be or become an annoyance or a nuisance to the residents of the Subdivision." A separate section specifically prohibits residents from keeping any "pit bulldogs" within the community.

In November 2011, neighbors discovered two pit bulls roaming freely throughout the subdivision. Multiple calls were made to 911. One caller reported that she almost struck the dogs with her vehicle. Another claimed that the dogs had chased a woman with a baby carriage down the street. The woman reportedly had to use mace to keep the dogs at bay. When police arrived on scene, the dogs were described as "aggressive." One officer reported that he nearly used deadly force against one of the animals because it started to charge him.

The dogs were traced back to Thomas, who claimed that he had adopted them as strays more than three years earlier. Thomas said that they were playful dogs, which he had named Diamond and Kane. After the incident with police, the State of Texas pursued legal action against Thomas and obtained a judgment declaring the male dog Kane to be a vicious and dangerous dog. The judgment ordered Thomas to carry liability insurance for the dog and to take other protective measures to secure the safety of the community.

The property owners' association, Lake Cove Community Association, Inc., also pursued legal action against Thomas. Lake Cove alleged that Thomas was keeping the dogs in violation of the deed restrictions, thereby creating a health and safety hazard in the subdivision. Lake Cove sought a permanent injunction,

attorney's fees, and other statutory relief. Thomas filed an answer generally denying the allegations. Lake Cove then moved for summary judgment.

In support of its motion, Lake Cove attached veterinary records showing that the dogs were Staffordshire terriers. This breed has been known by various names, including "pit dogs." Lake Cove also attached the police report and the dangerous dog judgment, which also referred to the dogs as "pit bulls" and "Staffordshire bull terriers." Based on this evidence, Lake Cove argued that it was entitled to injunctive relief because the dogs qualified as "pit bulldogs," which are proscribed by the Declaration. As an alternative theory, Lake Cove also argued that Thomas's keeping of the two dogs constituted a nuisance. Lake Cove attached the affidavits of two members serving on the Lake Cove Board of Directors. Both directors attested that the Board considered Thomas's dogs to be "a nuisance and a threat to the residents of the subdivision."

Thomas filed a summary judgment response contesting Lake Cove's claim that his dogs were pit bulls. In his affidavit, Thomas attested that his dogs were "mutts" of an unknown breed, and that he was no longer keeping them at his home or within the subdivision. Thomas also raised other arguments in his response, objecting for instance that Lake Cove's evidence was inadmissible as hearsay. Thomas further disputed Lake Cove's request for attorney's fees, claiming that there was insufficient proof that the fees were reasonable and necessary. In no part of his response did Thomas ever address Lake Cove's theory that his dogs were a nuisance.

The trial court granted summary judgment in favor of Lake Cove. The court's order included a permanent injunction, which enjoined Thomas "from keeping any pit bulldog on the Property and on any property within the jurisdiction of the Association, including any American Staffordshire Terrier and specifically

3

the American Staffordshire Terriers known as 'Diamond' and 'Kane.'" The order further provided for an award of $2,314.33 in attorney's fees, plus statutory penalties and other costs.

Thomas filed a motion for new trial, urging that there were fact issues regarding both the breed of his dogs and the reasonableness of attorney's fees. The trial court granted the motion in part, limited to just the issue of attorney's fees. The parties then litigated that sole question in a hearing before the bench. After considering additional expenses that had been incurred, the court issued a final judgment awarding Lake Cove $5,347.50 in attorney's fees.

## INJUNCTION

A trial court's ruling on a request for injunctive relief is normally reviewed for an abuse of discretion. *See Operation Rescue-National v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). However, when the evidence conclusively shows that a party is violating the substantive law, there is no discretion to be exercised, and the trial court should enjoin the violation. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

A permanent injunction may be issued by way of summary judgment. *See id.* A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The nonmovant has no duty to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of its cause of action or defense as a matter of law. *See Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). Evidence is

conclusive only if reasonable minds could not differ in their conclusions. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

To obtain injunctive relief, the moving party must ordinarily show (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) an inadequate remedy at law. *See Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When the basis for suit is the enforcement of a deed restriction, the elements differ slightly. *Id.* Instead of showing proof of irreparable injury, the moving party need only demonstrate that the nonmoving party intends to do an act that would breach the restrictive covenant. *Id.*

We begin with Lake Cove's theory that Thomas was keeping two "pit bulldogs" in violation of a covenant. Restrictive covenants are subject to the general rules of contract construction. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). When construing a restrictive covenant, our primary goal is to ascertain and give effect to the intent of the drafters, using the language of the instrument as our guide. *See Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We examine the covenant as a whole in light of the circumstances present when it was written, affording words and phrases their commonly accepted meanings. *See Pilarcik*, 966 S.W.2d at 478; *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657–58 (Tex. 1987).

The term "pit bulldog" is not specifically defined in the deed restrictions, nor does it appear in any common dictionaries. We will construe the term using its closest analog—"pit bull"—whose ordinary meaning is "a short, heavy, broad-

5

chested dog with large, powerful jaws and a short, smooth coat." *See* Webster's New World College Dictionary 1029 (Victoria Neufeldt et al. eds., 3d ed. 1996). Lake Cove provided a more detailed description of this breed in its motion for summary judgment. Lake Cove attached an excerpt from Merriam-Webster's Online Dictionary, which defines "pit bull" as "a dog (as an American Staffordshire terrier) of any of several breeds or a real or apparent hybrid with one or more of these breeds that was developed and is now often trained for fighting and is noted for strength and stamina." Lake Cove also provided materials from the American Kennel Club, which has recognized the American Staffordshire terrier by several historical names, including "pit dog" and "Staffordshire bull terrier."

The evidence of Thomas's dogs is consistent with the common definitions of pit bulls. The veterinary records identified both dogs as Staffordshire terriers. The police report described the dogs as "two large pitbulls." And the dangerous dog judgment described the male dog Kane as a "Staffordshire bull terrier." Because the summary judgment evidence conclusively showed that Thomas was keeping "pit bulldogs" in violation of the restrictive covenant, we conclude that Lake Cove facially established its entitlement to injunctive relief. We now consider whether Thomas raised a question of material fact precluding Lake Cove's summary judgment.

A nonmovant's response to a motion for summary judgment must present fact issues in the form of proper summary judgment proof. *See Dubois v. Harris County*, 866 S.W.2d 787, 791 (Tex. App.—Houston [14th Dist.] 1993, no writ). Thomas's proof consists only of an affidavit in which he testified that his dogs were "mutts." The affidavit contains no elaboration on this point. Thomas did not specifically testify that his dogs were not pit bulls. Thomas testified instead that he was unsure of his dogs' pedigrees: "My dogs are mutts. I don't know exactly what

6

breed they are as they were adopted by me as stray dogs." We conclude that this testimony wholly fails to controvert Lake Cove's evidence that the dogs are pit bulls. *See* Tex. R. Civ. P. 166a(c) (summary judgment evidence must be "clear, positive and direct"); *Shadow v. Cont'l Airlines, Inc.*, No. 04-02-00930-CV, 2003 WL 22187139, *4 (Tex. App.—San Antonio Sept. 24, 2003, no pet.) (mem. op.) (nonmovant failed to raise a fact issue where summary judgment proof consisted of equivocal "I don't know" evidence).

As a separate issue, Thomas contends that Lake Cove's proof is inadmissible as hearsay, and thus, there is no evidence that the dogs are pit bulls. Thomas timely asserted a hearsay objection in his summary judgment response, but the record does not reflect that he obtained a ruling. The trial court granted Lake Cove's motion for summary judgment without addressing any of Thomas's objections. Because the record contains no rulings on any hearsay objections, Thomas failed to preserve this complaint for appellate review. *See Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.).

The evidence conclusively showed that Thomas's two dogs were pit bulls. Because there was no question that Thomas was violating a restrictive covenant, Lake Cove was entitled to injunctive relief as a matter of law. The trial court did not err by granting summary judgment in favor of Lake Cove. We overrule Thomas's first issue without addressing his additional argument disputing the claim that his dogs were a nuisance.

## ATTORNEY'S FEES

In his second issue, Thomas argues that the trial court abused its discretion by more than doubling the amount of attorney's fees that had originally been awarded in the summary judgment. Without citing any authority or standard of

7

review, Thomas contends that the final amount is "unreasonable." We construe this complaint as a challenge to the factual sufficiency of the evidence.

We consider and weigh all of the evidence in a factual sufficiency challenge. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761–62 (Tex. 2003). We will only set aside a finding if the evidence is so weak, or if the finding is so against the great weight and preponderance of the evidence, as to be clearly wrong and unjust. *Id.* at 761. We defer to a trial court's findings if they are supported by the evidence. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008). Under this standard, we may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

The only witness at the bench trial was Lake Cove's attorney, Luke Tollett. When Tollett filed Lake Cove's traditional motion for summary judgment, he had sought just $2,314.33 in reasonable and necessary attorney's fees. The affidavit attached to the motion described charges incurred between November 17, 2011, and February 24, 2012. As of November 13, 2012, the date of the bench trial, Tollett claimed that the expenses had increased to $4,952.50, excluding additional fees for trial preparation that day. Tollett supported his claim with an updated invoice containing detailed descriptions of each of the intervening billing events. The invoice showed that Tollett attended no fewer than four additional hearings since filing the motion for summary judgment. Altogether, the record showed that more than fifteen hours of additional services had been billed.

Thomas did not call any witnesses or produce any evidence controverting Tollett's testimony. The trial court found that "a not insubstantial amount of work" had been done since the filing of the motion for summary judgment. The court

8

determined that the request for $4,952 in attorney's fees was reasonable. After considering the additional costs for Tollett's appearance at the bench trial, the court awarded a total amount of $5,347.50. Based on the record as a whole, we conclude that this amount is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. We overrule Thomas's second issue.

## CONCLUSION

The judgment of the trial court is affirmed.


/s/    Tracy Christopher
        Justice


Panel consists of Justices Boyce, Christopher, and Brown.