**Affirmed and Memorandum Opinion filed October 19, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00139-CV

**SOUTHWYCK, SECTION IV HOMEOWNERS' ASSOCIATION, INC.,**
**Appellant**

**V.**

**SOUTHWYCK COMMUNITY ASSOCIATION, INC., Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 77417-CV**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute between two homeowners' associations. Appellant Southwyck, Section IV Homeowners' Association, Inc. (the "village association") sought to withdraw from an organizational structure that intertwined it with appellee Southwyck Community Association, Inc. (the "master association"). To advance this aim, the village association attempted to amend the associations' governing instrument to effectuate its withdrawal. This appeal focuses on whether

an amendment requires a majority vote from both the master and the village association or only from those individuals residing in the village association. We affirm the trial court's November 20, 2015 final judgment because we conclude that an amendment to the associations' governing instrument requires a majority vote from both associations. Likewise, we conclude that the trial court's permanent injunction enforcing the governing instrument's terms did not constitute an abuse of its discretion.

BACKGROUND

I.      The Dual Southwyck Homeowners' Associations

The master association provides for the maintenance, preservation, and architectural control of the Southwyck subdivision in Brazoria County, Texas. The Southwyck subdivision is divided into three numbered sections[1] and each numbered section is governed by a separate village association. Under this arrangement, each numbered section is ultimately managed by two homeowners' associations — the master association and a village association.

The dispute here is between the master association and the Section IV village association. Both homeowners' associations were formed in the Section IV Declaration of Covenants, Conditions and Restrictions. The Declaration states that the master association and the village association are intended to "jointly . . . provide for protection, maintenance, preservation and architectural control of the residential Lots and Village Common Areas." Notwithstanding this cooperative arrangement, the Declaration is clear that the master association possesses greater authority in certain areas:

- If the village association fails or refuses to enforce any of the

_____

[1] The Southwyck subdivision is divided into Sections I, IV, and V.

2

Declaration's restrictions, the master association has the right to enforce those restrictions and charge the village association all of its costs, expenses, and attorney's fees incurred in securing enforcement.

- The master association's architectural control committee has final authority over the village association's architectural control committee regarding the approval of building plans and landscaping.

- In the event of a conflict regarding whether an amenity in the subdivision is considered a General Common Area or is specific to Section IV, the master association's decision is final.

- The master association has the sole and exclusive right to collect maintenance assessment fees from residents of the Southwyck subdivision.

- Collected maintenance assessments are disbursed first to the master association with the remainder tendered to the village association.

The Declaration has governed the associations' relationship since 1984.

In 2014, members of the village association desired to withdraw from the master association and establish an independent homeowners' association. To effectuate this change, the village association sought to amend the Declaration and vest the management of Section IV solely in the village association. The Declaration may be amended:

> [A]t any time when an instrument setting forth said changes and signed by those persons holding a majority of votes in the Village Association and the Master Association is placed on record in the real property records of Brazoria County, Texas.

The master association asserts that this provision requires that an amendment to the Declaration be approved by a majority vote of the village association and a majority vote of the broader master association. The village association contends that an amendment to the Declaration requires a majority vote from only those individuals who actually own a lot in Section IV.

3

## II. The Underlying Action and the Trial Court Proceedings

The master association filed suit against the village association on June 3, 2014, requesting declaratory relief, a temporary restraining order, and a temporary and permanent injunction preventing the village association from unilaterally amending the Declaration without a majority vote from both the master association and the village association. The parties filed cross-motions for summary judgment. In its April 29, 2015 interlocutory order, the trial court granted in part the master association's motion for traditional summary judgment and ruled in favor of the master association on its declaratory judgment claim.

The trial court held a hearing on the master association's request for permanent injunctive relief on July 20, 2015, and heard testimony from Scarlett Kutch, the village association's board president. Ms. Kutch discussed the village association's attempts to organize support for the amendment to the Declaration and its current state of proxy solicitation. Ms. Kutch testified that the village association had tried to "get rid of Southwyck [Master] Association . . . for over 20 years" and still "wish[ed] to amend" the Declaration to effectuate its withdrawal. According to Ms. Kutch, the village association had not made any attempts to reach out to members of the broader master association regarding the amendment. When asked about the trial court's April 2015 order on the master association's declaratory judgment claim, Ms. Kutch stated that she did not understand the order or its interpretation of the Declaration's requirements to amend.

Although Ms. Kutch indicated that the village association would not breach the trial court's April 2015 order, the trial court noted that Ms. Kutch "may not forever be the person in charge of the [village] association; and the next person may or may not choose to take the same procedure." The trial court concluded that the risk of filing an improper amendment to the Declaration was:

[T]oo great to take because even though there could be damages, those people that are harmed, it could be significant; and whether or not this association would have enough funds to pay all of those damages, I don't know.

The trial court granted the master association's request for a permanent injunction and enjoined the village association from amending the Declaration without a majority vote from both associations:

[T]he Defendant and Defendant's current and future officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant who receive actual notice of this Order by personal service or otherwise, are hereby permanently enjoined from recording or attempting to record any document that amends or purports to amend or restate (or both amend and restate) the Declaration of Covenants, Conditions and Restrictions for Southwyck Section IV ("Section IV Declaration") unless that document is signed by those persons holding a majority of votes in the Southwyck Community Association, Inc. ("Master Association") and signed by those persons holding a majority of votes in the Southwyck, Section IV Homeowners' Association, Inc. ("Village Association") . . . .

The village association challenges on appeal the traditional summary judgment granted on the master association's declaratory judgment claim and the trial court's permanent injunction.

## STANDARDS OF REVIEW

A declaratory judgment is intended "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (Vernon 2015). A declaratory judgment rendered by summary judgment is reviewed under the traditional summary judgment standards. *In re M.M.M.*, 428 S.W.3d 389, 393 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

A summary judgment is reviewed *de novo*. *Valence Operating Co. v. Dorsett*,

164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we examine the record in the light most favorable to the nonmoving party, indulging every reasonable inference and resolving any doubts in the nonmoving party's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

For a traditional summary judgment, the moving party has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Byrd*, 467 S.W.3d at 481. When a plaintiff moves for a traditional summary judgment on a claim it asserts, it must conclusively prove each element of its claim as a matter of law. *Universal MRI & Diagnostics, Inc. v. Med. Lien Mgmt. Inc.*, 497 S.W.3d 653, 658 (Tex. App.—Houston [14th Dist.] 2016, no pet.). If the plaintiff satisfies this burden, the burden shifts to the defendant to raise a genuine issue of material fact sufficient to defeat summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

We review a trial court's decision to grant a permanent injunction for an abuse of discretion. *Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A trial court abuses its discretion when its decision is arbitrary or unreasonable, or when it acts without reference to any guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

## ANALYSIS

The village association asserts on appeal that the trial court erred in declaring that an amendment to the Declaration requires a majority vote from both the master association and the village association. Under its interpretation of the Declaration, the village association claims that an amendment requires a majority vote from only those individuals who actually own a lot in Section IV. The village association also challenges the trial court's permanent injunction and contends that the injunction did

6

not resolve all issues related to the requirements for amending the Declaration.

## I. Amending the Declaration Requires a Majority Vote From Both the Master Association and the Village Association

We review the trial court's interpretation of a restrictive covenant *de novo*. *Wiese*, 384 S.W.3d at 400.

Restrictive covenants in a deed are analyzed under the general rules of contract interpretation. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). When reviewing a restrictive covenant, our primary goal is "to ascertain and give effect to the intent of its drafters, using the language of the instrument as our guide." *Wiese*, 384 S.W.3d at 400. We analyze the covenant as a whole in light of the circumstances present at the time it was written, and afford words and phrases their commonly-accepted meaning. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657-58 (Tex. 1987); *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.— Houston [1st Dist.] 2010, no pet.). We consider "the entire writing in an effort to harmonize and give effect to all the provisions . . . so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

Whether a restrictive covenant is ambiguous is a question of law for the court to decide. *Pilarcik*, 966 S.W.2d at 478; *Sanchez v. Southampton Civic Club, Inc.*, 367 S.W.3d 429, 434 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A restrictive covenant is unambiguous if it can be given a definite or certain legal meaning. *Sanchez*, 367 S.W.3d at 434. In contrast, a covenant is ambiguous if its terms are susceptible to more than one reasonable interpretation. *Wiese*, 384 S.W.3d at 400. A covenant is not ambiguous simply because the parties disagree over its interpretation. *Id.*; *Uptegraph*, 312 S.W.3d at 926.

The Declaration is unambiguous and may be amended only by "an instrument setting forth said changes and signed by those persons holding a majority of votes in

the Village Association and the Master Association . . . ." The plain language of this provision makes amending the Declaration contingent on securing <u>both</u> a majority vote from the master association and a majority vote from the village association.

This conclusion comports with an examination of the Declaration as a whole. *See Webster*, 128 S.W.3d at 229; *Wilmoth*, 734 S.W.2d at 657-58; *Uptegraph*, 312 S.W.3d at 925. The Declaration establishes a collaborative arrangement between the master association and the village association with the master association occupying the dominant role. For example, the Declaration vests the master association with greater authority to resolve conflicts between the associations in the areas of covenant enforcement, architectural control, and amenity designation. The Declaration also provides that the master association alone can collect maintenance fees from Southwyck residents; these fees are disbursed to the village association only after the master association receives its allotted portion. In light of this relationship, it is reasonable to read the Declaration's amendment provision as requiring a majority vote from both the master association and the village association.

The village association's interpretation of the Declaration's amendment provision and its related sections fails to counter the instrument's plain meaning.

The Declaration states that ownership of a lot is required to vote as part of either the master association or the village association.[2] The village association asserts that the Declaration's definition of "lot" includes only those residential lots within Section IV.[3] The village association contends that, whether a vote is cast as

---

[2] Those entitled to vote as part of the master association must own a lot subject to the master association maintenance fee, which is assessed against all lots in the Southwyck subdivision. Those entitled to vote as part of the village association must own a lot subject to the village association maintenance fee, which is assessed against only those lots in Section IV.

[3] The Section IV Declaration defines a "lot" as "any plot of land as described above or as

8

part of the master association or the village association, ownership of a lot in Section IV is required to vote on an amendment to the Declaration.

This proposed interpretation renders meaningless the Declaration's requirement that an amendment be approved by "those persons holding a majority of votes in the Village Association and the Master Association . . . ." (emphasis added). Had the drafters of the Declaration intended amendments to be solely within the province of Section IV residents, they could have omitted altogether any mention of the "Master Association" in the amendment provision. We aim to afford consequence to each part of the Declaration and decline to adopt an interpretation of the instrument that renders some of its terms meaningless. *See Webster*, 128 S.W.3d at 229.

The village association's construction of the amendment provision and its related sections is likewise at odds with other provisions in the Declaration that depend upon a vote secured from the master association. For example, the Declaration provides that the master association and the village association each maintain an independent architectural control committee; each association can independently change the membership of its architectural control committee through a majority vote. If the Declaration made voting contingent upon ownership of a lot in Section IV, then the master association's architectural control committee — like that belonging to the village association — would be subject to the control of only those individuals who owned a lot in Section IV despite managing architecture for the entire Southwyck subdivision and being vested with final authority over the village association's architectural committee.

In short, the village association's interpretation of the amendment provision

---

described in any replat thereof, and all plats or lots annexed pursuant to Section 1 of Article IX hereof."

and its related sections ignores the structure created by the Declaration to govern the associations' integrated operations and the master association's dominant role in the arrangement. In stark contrast to this scheme, the village association's interpretation would permit the village association to withdraw from the master association-village association paradigm without any input or consent from the master association. The Declaration, considered as a whole, does not support this forced construction. *See Wilmoth*, 734 S.W.2d at 657-58; *Uptegraph*, 312 S.W.3d at 925.

Challenging the trial court's April 29, 2015 order granting in part the master association's motion for summary judgment, the village association also asserts that the order does "not address who can vote on an amendment to the Southwyck Section IV Declaration." The April 2015 order granted the master association's declaratory judgment claim, which requested that the trial court declare that the village association cannot "unilaterally withdraw from the Master Association-Village Association paradigm" without an amendment approved by a majority of members in <u>both</u> the master association and the village association. By granting this request, the April 2015 order adequately addressed the requirements to amend the Declaration.

## II. The Trial Court Did Not Abuse Its Discretion in Granting the Master Association's Request for a Permanent Injunction

The purpose of injunctive relief "is to halt wrongful acts that are either threatened or in the course of accomplishment." *Wiese*, 384 S.W.3d at 399.

An application for injunctive relief must demonstrate the existence of (1) a wrongful act; (2) imminent harm; and (3) irreparable injury. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Entitlement to injunctive relief also requires that the movant lack an adequate remedy at law. *Id*. When an injunction is sought to enforce

10

a covenant in a deed, the burden of proof is altered and the movant "is only required to prove that the defendant intends to do an act that would breach the restrictive covenant." *Id*. Once granted, an injunction must be specific and describe in clear and precise detail the acts sought to be restrained. *See* Tex. R. Civ. P. 683.

The trial court's permanent injunction did not constitute an abuse of its discretion. Ms. Kutch's testimony showed that preparations had been made to mobilize voters in the village association with the aim of amending the Declaration. Ms. Kutch also testified that the village association had not reached out to members of the broader master association to secure their vote on the amendment. The trial court concluded that an improper amendment to the Declaration would cause significant harm to affected homeowners that would be difficult to remedy. The trial court's permanent injunction prevented this occurrence and enforced the Declaration's requirement that an amendment be signed by a majority of voters in the master association and a majority of voters in the village association. *See Jim Rutherford Invs., Inc.*, 25 S.W.3d at 849.

The village association also claims that the trial court's permanent injunction "left the issue of who can vote to amend the Southwyck Section IV Declaration up in the air." The injunction is clear that an amendment to the Declaration is prohibited unless it is signed by a majority of voters in <u>both</u> the master association and the village association. The injunction enjoins violations of this mandate by the current and future village association administrations as well as those acting in conjunction with the village association. The injunction is specific and describes in clear and precise detail the individuals to whom it applies and the acts that it restrains. *See* Tex. R. Civ. P. 683.

11

## CONCLUSION

We affirm the trial court's November 20, 2015 final judgment and conclude that (1) an amendment to the Declaration requires a majority vote from both the master association and the village association; and (2) the trial court's permanent injunction enforcing the Declaration's voting requirements did not constitute an abuse of its discretion.


/s/    William J. Boyce
        Justice


Panel consists of Justices Boyce, Jamison, and Brown.