ACCEPTED
15-25-00107-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/21/2025 12:09 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00107-CV**

In the Fifteenth District Court of Appeals, Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/21/2025 12:09:39 PM
CHRISTOPHER A. PRINE
Clerk

TEXAS DEPARTMENT OF INSURANCE AND CASSIE BROWN, IN HER CAPACITY
AS COMMISSIONER OF THE TEXAS DEPARTMENT OF INSURANCE,
*Appellants,*

V.

TEXAS LAND TITLE ASSOCIATION,
*Appellee.*

On Appeal from the 345th District Court of Travis County, Texas
The Honorable Daniella DeSeta Lyttle, Presiding

## BRIEF OF APPELLANTS TEXAS DEPARTMENT OF INSURANCE AND COMMISSIONER CASSIE BROWN

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

ERNEST C. GARCIA
Chief, Administrative Law
Division

ROSALIND L. HUNT
State Bar No. 24067108
Assistant Attorney Generals
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4166
Facsimile: (512) 320-0167
Rosalind.Hunt@oag.texas.gov

ATTORNEYS FOR APPELLANTS
TEXAS DEPARTMENT OF INSURANCE AND
COMMISSIONER CASSIE BROWN

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

*Defendants & Appellants:*          *Counsel:*

Texas Department of Insurance      Rosalind L. Hunt
and Cassie Brown, in her           Assistant Attorney General
capacity as Commissioner of the    Administrative Law Division
Texas Department of Insurance      Office of the Attorney General of Texas
                                   P.O. Box 12548, Capitol Station
                                   Austin, Texas 78711-2548


*Plaintiff & Appellee:*             *Counsel:*

Texas Land Title Association        Ray C. Chester
                                   Andrew M. Edge
                                   McGinnis Lochridge LLP
                                   1111 W. 6th Street, Bldg. B, Ste. 400
                                   Austin, Texas 78703

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act, Texas Government Code chapter 2001 |
| App. [letter] | Appendix |
| C.R. [page] | Clerk's Record |
| Commissioner | Commissioner of the Texas Department of Insurance |
| OPIC | Office of Public Insurance Counsel |
| TDI | Texas Department of Insurance |
| TLTA | Texas Land Title Association |
| UDJA | Uniform Declaratory Judgments Act, Texas Civil Practice & Remedies Code chapter 37. |

# TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................ii

Glossary ............................................................................................ iii

Table of Contents ..............................................................................iv

Index of Authorities..............................................................................vi

Statement of the Case .........................................................................ix

Statement on Oral Argument ...................................................................x

Issues Presented...................................................................................x

    1.  Did the trial court abuse its discretion by exceeding the scope of review on a temporary injunction when it rendered judgment on the merits? ..................................................................................x

    2.  Should the trial court have dismissed TLTA's claim for declaratory relief under the UDJA as a redundant remedy when the APA provides the same relief in either TLTA's suit for judicial review or rule challenge?.................................................x

Introduction......................................................................................1

Statement of Facts .............................................................................1

   I.    TDI regulates title insurance in Texas............................................1

   II.   TDI fixes a new title insurance premium rate............................3

   III.  TLTA files suit to challenge the new rate. ...............................5

Standards of Review.............................................................................7

Summary of the Argument .....................................................................8

Argument..........................................................................................9

   I.    The trial court abused its discretion by exceeding the scope of review on the application for a temporary injunction

when it rendered judgment on the merits.....................................9

A.    The trial court made a finding on the merits of the lawsuit, and the finding was not necessary to any element of injunction relief.................................................................11

B.    The trial court granted TLTA's petition for review of the commissioner's order. ..........................................................13

C.    The trial court abused its discretion when ordering a merits remedy in an interlocutory order.................................14

II.    The UDJA declaratory claims are barred as a redundant remedy and must be dismissed................................................16

Conclusion & Prayer ............................................................................19

Certificate of Compliance....................................................................22

Certificate of Service ...........................................................................22

Index of Appendices ............................................................................23

# INDEX OF AUTHORITIES

**Cases**

*8100 N. Freeway Ltd. v. City of Houston,*
329 S.W.3d 858
(Tex. App.—Houston [14th Dist.] 2010, no pet.) ........................... 10, 11

*Butnaru v. Ford Motor Co.,*
84 S.W.3d 198 (Tex. 2002) ....................................................... 7, 13

*Dall. Area Rapid Transit v. Whitley,*
104 S.W.3d 540 (Tex. 2003) ............................................................ 17

*Duhart v. State,*
610 S.W.2d 740 (Tex. 1980) ............................................................ 17

*Gonzalez v. Tex. Med. Bd.,*
No. 03-22-00205-CV, 2023 WL 7134982
(Tex. App.—Austin Oct. 31, 2023, pet. granted) ............................... 9, 19

*Huynh v. Blanchard,*
694 S.W.3d 648 (Tex. 2024) .............................................................. 8

*Kerrville State Hosp. v. Fernandez,*
28 S.W.3d 1 (Tex. 2000) ................................................................. 17

*Patel v. Tex. Dep't of Licensing & Regulation,*
469 S.W.3d 69 (Tex. 2015) .............................................................. 18

*R.R. Comm'n v. Home Transp. Co.,*
670 S.W.2d 319 (Tex. App.—Austin 1984, no writ) ........................... 19

*RWI Constr., Inc. v. Comerica Bank,*
583 S.W.3d 269 (Tex. App.—Dallas 2019, no pet.) ........................... 7, 8

*State v. Sledge,*
36 S.W.3d 152 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) .... 17

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) ......................................................... 8, 17

*Tex. Dep't of State Health Services v. Balquinta*,
   429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dism'd)................. 18, 19

*Tex. Dep't of Transp. v. Jones*,
   8 S.W.3d 636 (Tex. 1999) ..............................................................17

*Tex. Emp. Comm'n v. Child, Inc.*,
   738 S.W.2d 56 (Tex. App.—Austin 1987, writ denied)........................19

*Tex. Natural Res. Conservation Comm'n v. IT–Davy*,
   74 S.W.3d 849 (Tex. 2002) ...............................................................8

*Tom James of Dall., Inc. v. Cobb*,
   109 S.W.3d 877 (Tex. App.—Dallas 2003, no pet.).............. 8, 10, 11, 13

*Wiese v. Heathlake Cmty. Ass'n, Inc.*,
   384 S.W.3d 395 (Tex. App.—Houston [14th Dist.] 2012, no pet.).......10

**Statutes**

Tex. Civ. Prac. & Rem. Code § 51.014(a)(4).............................................7

Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).............................................7

Tex. Civ. Prac. & Rem. Code § 51.014(b) ................................................7

Tex. Gov't Code § 2001.174 ...................................................................15

Tex. Gov't Code § 2001.174(1)–(2)..........................................................15

Tex. Gov't Code § 2001.175(c) ...............................................................16

Tex. Gov't Code § 311.034 .....................................................................17

Tex. Ins. Code § 2501.002.......................................................................1

Tex. Ins. Code § 2501.003 (12) ................................................................1

Tex. Ins. Code § 2703.151.......................................................................2, 3

Tex. Ins. Code § 2703.152.......................................................................2

Tex. Ins. Code § 2703.153(a) ...................................................................2

Tex. Ins. Code § 2703.201............................................................2

Tex. Ins. Code § 2703.202............................................................2

Tex. Ins. Code § 2703.202(b) ......................................................3

Tex. Ins. Code § 2703.202(g) ...................................................3, 5

Tex. Ins. Code § 2703.202(j) ........................................................5

Tex. Ins. Code § 2703.206............................................................3

Tex. Ins. Code § 37.053(a) ...........................................................3

# STATEMENT OF THE CASE

*Nature of the Case:*      Appellee Texas Land Title Association (TLTA) filed a suit for judicial review, an application for a temporary injunction, and other declaratory relief to challenge a final order of the Commissioner of the Texas Department of Insurance (TDI). C.R. 3–37. The order sets a new rate for basic title insurance, effective July 1, 2025. C.R. 169.

*Trial Court:*      The Honorable Judge Daniella DeSeta Lyttle, sitting in the 345th Judicial District Court, Travis County, Texas. C.R. 170.

*Trial Court Disposition:*      After a hearing on TDI's plea to the jurisdiction and TLTA's application for a temporary injunction, the trial court issued one order overruling TDI's first amended plea to the jurisdiction (C.R. 171), and a separate order granting TLTA's first amended application for a temporary injunction (C.R. 168–170).

## STATEMENT ON ORAL ARGUMENT

Oral argument is requested because TDI would like an opportunity to answer any questions not adequately resolved after reading the briefs.

## ISSUES PRESENTED

1.    Did the trial court abuse its discretion by exceeding the scope of review on a temporary injunction when it rendered judgment on the merits?

2.    Should the trial court have dismissed TLTA's claim for declaratory relief under the UDJA as a redundant remedy when the APA provides the same relief in either TLTA's suit for judicial review or rule challenge?[1]

---

[1] TLTA's suit for judicial review is brought under Texas Insurance Code section 36.201, in accordance with the APA's procedures in Texas Government Code chapter 2001. C.R. 17, ¶44. TLTA's rule challenge is brought under the APA, Texas Government Code section 2001.038. C.R. 16.

## INTRODUCTION

The trial court went too far in its order on the temporary injunction and not far enough in the order on the plea to the jurisdiction. The order granting the temporary injunction exceeded the scope of review by making declarations on the *merits* of TLTA's petition. *See* C.R. 168–70; App. A. The order overruling the plea to the jurisdiction failed to address whether the court had jurisdiction over TLTA's redundant UDJA claim. *See* C.R. 171; App. B. Through this accelerated appeal, TDI asks the Court to strike three declarations from the temporary injunction order and reverse the denial of the plea to the jurisdiction only as to the redundant UDJA claim.

## STATEMENT OF FACTS

### I.    TDI regulates title insurance in Texas.

The Texas Department of Insurance regulates the business of title insurance on real and personal property to protect Texas consumers and provide adequate and reasonable rates of return for title insurance companies and agents. Tex. Ins. Code § 2501.002. Title insurance protects real property owners and lenders from problems with title, such as a lien, encumbrance, or defect in title. *Id.* § 2501.003 (12). Title companies search for problems with the title that need to be corrected

before buyers purchase the property. If there is a challenge to ownership later, the title company will defend against lawsuits or cover losses.

The TDI commissioner sets the basic premium rates for title insurance in Texas. Tex. Ins. Code § 2703.151; C.R. 25. A premium is the price paid to purchase a title insurance policy. The premium is paid one time at close on the sale of the property. The basic premium rate is fixed, but the premium price varies based on the purchase price of the property. The fixed premium rates apply across the industry. Tex. Ins. Code § 2703.151. In other words, all title insurance agents and companies must charge the same basic premium rate. *Id.* When fixing title rates, the commissioner must consider relevant income and expense data from the industry. Tex. Ins. Code § 2703.152. Each title insurance company and agent must submit annually to TDI statistical data relating to loss experience, operational expenses, and other matters. Tex. Ins. Code § 2703.153(a). The data submitted in the annual reports is used to fix premium rates. *Id.*

Before setting a new premium rate, TDI must provide reasonable notice and afford a hearing to title insurance companies, title insurance agents, and the public. Tex. Ins. Code § 2703.201, .202; C.R. 25. At any

time the commissioner determines necessary or proper, the commissioner may order a public hearing to consider adoption of premium rates. Tex. Ins. Code § 2703.206. Alternatively, third parties, like an association of title insurance agents, such as TLTA, or the Office of Public Insurance Counsel (OPIC), can request a public hearing to consider changing a premium rate. Tex. Ins. Code § 2703.202(b). At the conclusion of the public hearing and consideration of relevant data, the commissioner renders a decision and issues a final order. Tex. Ins. Code § 2703.202(g). When a new rate takes effect, it applies across the industry, not just to the parties who requested or participated in the rate change. Tex. Ins. Code § 2703.151. If an order that sets a rate under the Insurance Code is appealed, the rate in the order rate remains in effect during the pendency of the appeal. Tex. Ins. Code § 37.053(a). Title insurers shall use the rate provided in the order while the appeal is pending. *Id.*

## II. TDI fixes a new title insurance premium rate.

TDI published its 2024 Title Rate Report on its website on September 16, 2024. C.R. 25, ¶1. The report analyzed statistical data submitted by title insurance companies and agents in their annual reports and included multiple rate indications. In November of 2024,

TLTA and OPIC each requested a public hearing to consider title insurance basic premium rates. C.R. 26, ¶¶3, 6.

Since the last rate setting in 2019, the title industry has experienced significant growth and profits. C.R. 31, ¶20; App. C. For example, industry-wide premiums paid by Texas policyholders went from $2.27 billion in 2019 to **$3.69 billion** in 2021. C.R. 31, ¶22. In 2023, the premiums returned to pre-pandemic levels of $2.38 billion. *Id.* Since 2019, the title industry's actual profit ratios have been dramatically above the target profit ratio used in setting the current basic title premium rates. C.R. 29, ¶15.

TLTA and OPIC each submitted their own analyses of industry data, which included their rate indications. TLTA's indications projected a rate decrease between 0% and −4.7%. C.R. 29, ¶13. However, TLTA requested no change in rates or a decrease of −1%. C.R. 25, ¶2. OPIC's actuarial analysis indicated a rate decrease between −8.9% and −19.0%. C.R. 29, ¶13. TDI's indications projected a rate decrease between −4.9% and −15.4%. *Id.* Each of the methods from TLTA, OPIC, and TDI indicated a reduction in basic premium rates. *Id.*

After notice and a public hearing on January 23, 2025, the

commissioner reviewed and evaluated all the information submitted by TLTA, OPIC, and TDI staff. C.R. 32, ¶6. On February 6, 2025, the commissioner issued a decision and final order approving a proposed rate decrease of −10%. C.R. 25–32; *see* Tex. Ins. Code § 2703.202(g), (j). The commissioner concluded the reduction would save Texas consumers an estimated $238 million per year without being confiscatory to title insurance companies and agents. C.R. 32 ¶6. The final order stated the new rate would go into effect on July 1, 2025. C.R. 32; App. C.

## III.  TLTA files suit to challenge the new rate.

On March 6, 2025, TLTA filed a petition for judicial review, an application for a temporary injunction, and other declaratory relief to challenge the February 6, 2025, rate order. C.R. 3–37. TLTA brought its suit for judicial review under Texas Insurance Code section 36.201. C.R. 17, ¶44. TLTA's request for injunctive relief sought to prevent the new rate from going into effect on July 1, 2025. C.R. 20–22. TLTA's request for declaratory relief was alleged under the APA, Texas Government Code section 2001.038, and the UDJA, Texas Civil Practice & Remedies Code chapter 37. C.R. 16. In response, TDI filed an answer, plea to the jurisdiction, and response to the request for injunctive relief. C.R. 38–

108.

A two-day hearing was held on the TDI's plea to the jurisdiction and TLTA's application for a temporary injunction on May 27 and 28, 2025. C.R. 168–171. After considering the evidence, administrative record, and argument of counsel, the trial court issued an order granting TLTA's first amended application for a temporary injunction (C.R. 168–170), and a separate order overruling TDI's first amended plea to the jurisdiction (C.R. 171). The order on the temporary injunction found TDI did not strictly comply with the rulemaking requirements in the Texas Insurance Code section 2703.202; granted TLTA's petition for review; remanded the case back to the agency for further proceedings; enjoined the commissioner's rate order from taking effect on July 1, 2025; and set a trial on the merits for December 1, 2025. C.R. 169. The order overruling TDI's plea to the jurisdiction found the court had jurisdiction under Texas Insurance Code section 36.201 and Texas Government Code section 2001.038(a) but did not address the UDJA claim. C.R. 171.

TDI filed this accelerated appeal of the order granting the temporary injunction and order overruling the plea to the jurisdiction. C.R. 174; Tex. Civ. Prac. & Rem. Code § 51.014(a)(4), (8). The appeal

stayed all proceedings in the trial court pending resolution of the appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(b). As a result, the rate order, with the 10% reduction, would take effect July 1st. TDI and TLTA agreed that emergency relief to lift the stay, thereby delaying the new rate's effect once again, was necessary to prevent rate whiplash for consumers and the title industry. Upon TLTA's unopposed emergency motion to lift the stay on the temporary injunction, the Court ordered the stay of the temporary injunction lifted until disposition of this appeal or further order of the court. The statutory stay remains in place for all other trial court proceedings.

## STANDARDS OF REVIEW

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Id.*; *RWI Constr., Inc. v. Comerica Bank*, 583 S.W.3d 269, 274 (Tex. App.—Dallas 2019, no pet.). In reviewing the trial court's decision, reviewing courts draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *RWI Constr., Inc. v. Comerica*

*Bank*, 583 S.W.3d 269, 274–75. When the trial court considers conflicting evidence, there can be no abuse of discretion. *Id.* However, the trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support the trial court's determination of the existence of probable injury or probable right of recovery. *Id.*; *Huynh v. Blanchard*, 694 S.W.3d 648, 674 (Tex. 2024).

Whether a court has subject matter jurisdiction is a question of law reviewed *de novo. Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

## SUMMARY OF THE ARGUMENT

Texas courts have held that legal rights cannot be *finally* determined upon a temporary injunction hearing. *See Tom James of Dall., Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.). Yet, that is exactly what the trial court did. In the order granting the temporary injunction, the court *found* TDI did not strictly comply with the rulemaking requirements, *granted* TLTA's petition for review, and *remanded* the case to the agency for further proceedings. C.R. 168–69; App. A. All of these declarations were merits determinations, and none

of them were necessary to satisfy a single element of injunctive relief. The trial court abused its discretion when it exceeded the scope of review on the application for a temporary injunction, and the court should strike these three declarations entirely.

The trial court's order overruling the plea to the jurisdiction failed to address jurisdiction as to the UDJA claim. C.R. 171; App. B. TLTA's UDJA claim is a redundant remedy because the APA provides the same relief in either TLTA's suit for judicial review under the Texas Insurance Code section 36.201 or rule challenge under Texas Government Code section 2001.038. *See Gonzalez v. Tex. Med. Bd.*, No. 03-22-00205-CV, 2023 WL 7134982, at *10 (Tex. App.—Austin Oct. 31, 2023, pet. granted). The Court should reverse the trial court's order and dismiss the UDJA declaratory claim as jurisdictionally barred.

## ARGUMENT

I. **The trial court abused its discretion by exceeding the scope of review on the application for a temporary injunction when it rendered judgment on the merits.**

The trial court abused its discretion by granting relief on the merits at a temporary injunction hearing. The purpose of the temporary injunction is to preserve the status quo until the case can be tried on its

merits. *Tom James of Dall., Inc.*, 109 S.W.3d at 882. TLTA sought a temporary injunction to prevent the new rate order from going into effect on July 1, 2025. Neither party set a hearing nor a trial on the merits to address TLTA's challenges to the Commissioner's order. At a temporary injunction hearing, courts are without authority to grant relief beyond what is requested. *See Wiese v. Heathlake Cmty. Ass'n, Inc.*, 384 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("A party seeking an injunction must be specific in pleading the type of relief sought because courts are without authority to grant relief beyond what is requested."*)*. The merits of the lawsuit are beyond the trial court's scope of review. *See 8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 864–65 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Simply put, a temporary injunction is not a ruling on the merits."). By rendering judgment on the merits, the trial court did not respect the unique function of the temporary injunction hearing, as described here:

> A temporary injunction hearing and a trial on the merits have different functions:
>
> [O]ur system of procedure is such that legal rights cannot be finally determined upon a hearing relating to the wisdom or expediency of issuing a status quo order. Deliberate action is essential for the accurate determination of legal rights and upon occasion this can be secured only by issuing a temporary

decree protecting a status quo. Ordinarily, the hearing upon the temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits.

*Id.* at 864 (quoting *Tom James of Dall., Inc.*, 109 S.W.3d at 884 (quotation marks omitted)). The trial court deprived TDI of notice and a hearing when it made determinations on the merits at a temporary injunction hearing. The trial court exceeded its authority when it made three declarations in the order on the temporary injunction. This Court should reverse and strike each of these three declarations and allow the parties to fully litigate these issues at trial.

A. **The trial court made a finding on the merits of the lawsuit, and the finding was not necessary to any element of injunction relief.**

The trial court abused its discretion by making a finding that essentially grants TLTA's claims under the APA. TLTA alleged in its amended petition, "Defendants are required to follow specific statutory and regulatory requirements in a rulemaking proceeding governing title insurance regulated rates, set forth above. A rule is invalid if not promulgated pursuant to proper procedure." C.R. 144–45, ¶40. TLTA alleged, "[t]he Order was issued in violation of Tex. Ins. Code Chapter 2703, the applicable provisions of the Texas Administrative Procedure

Act . . . ." C.R. 145, ¶41. TLTA makes the same allegations in its suit for judicial review: "[t]he Commissioner failed to comply with Texas Ins. Code § 2703.202, Tex. Gov't Code Chapter 2001, Subchapter B, especially §§ 2001.021, 2001.024, 2001.029, and 28 Tex. Admin. Code § 1.202 by failing to follow proper procedures for considering TLTA's rule petition . . . ." C.R. 145, ¶46.

The trial court's order on the temporary injunction delivers the final victory to TLTA on its claims with this finding:

> After considering the evidence and arguments of counsel, the Court FINDS Defendants did not strictly comply with the rulemaking requirements of Tex. Insurance Code section 2703.202, subdivision (c), in connection with the issuance of Commissioner's February 6, 2025 order number 2025-9125 (Commissioner's Order 2025-9125).

C.R. 168. Further, the finding that "TDI did not strictly comply with the rulemaking requirements" was not necessary for *any element* of injunctive relief. "An applicant for a temporary injunction must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. "Thus, the legal issues before the trial court at a temporary injunction hearing are whether the

applicant showed a probability of success and irreparable injury; the underlying merits of the controversy are not presented." *Tom James of Dall., Inc.*, 109 S.W.3d at 882. This finding violates the foundational principle that the merits of the controversy are not presented in a temporary injunction hearing. This finding exceeded the scope of the temporary injunction hearing and should be reversed and struck from the order as an abuse of discretion.

### B. The trial court granted TLTA's petition for review of the commissioner's order.

Going beyond making a finding on the merits of TLTA's APA claims, the trial court also outright grants TLTA's petition for review:

> IT IS THEREFORE ORDERED that Plaintiff's Petition for Review of Commissioner's Order 2025-9125 is GRANTED.

C.R. 169. TLTA's Petition for Review has six points of error. One, TDI failed to conduct a rule hearing and follow rulemaking procedure. C.R. 145–46, ¶46. Two, TDI misapplied the law and engaged in invalid ad hoc rulemaking by requiring an unlawful burden of proof. C.R. 146, ¶47–48. Three, TDI misapplied the law by failing to consider evidence related to confiscatory rate issue. C.R. 147, ¶49. Four, TDI misapplied the law by

failing to consider evidence related to all relevant income and expenses. C.R. 147, ¶50. Five, TDI failed to make findings of fact to support rate decrease. C.R. 148, ¶51. And six, TDI's rate table contains a rounding error that fails to reflect the 10% rate decrease. C.R. 148, ¶52. The temporary injunction order, on its face, "granted" them all. By doing so, the trial court rendered judgment on the suit for judicial review in a temporary injunction order. This declaration likewise exceeded the scope of the temporary injunction hearing and should be reversed and struck from the order as an abuse of discretion.

## C. The trial court abused its discretion when ordering a merits remedy in an interlocutory order.

The trial court abused its discretion when it remanded the case to the agency for further proceedings under Texas Government Code section 2001.174, rather than ordering additional evidence under section 2001.175(c):

> IT IS FURTHER ORDERED that this matter is hereby REMANDED to the Texas Department of Insurance for reconsideration of Commissioner's Order 2025-9125, and for further proceedings as may be necessary before that agency, to include but is not limited to additional income and expenses data used to fix premium rates for the year of 2023 and beyond, which were incomplete or previously unavailable and as recognized by the Commissioner's Order in her Findings of Fact 12(d) and its attendant footnote 2.

C.R. 169. The distinction between a remand and an order for additional evidence is significant. Under the substantial evidence standard of review in Texas Government Code section 2001.174, a court "may affirm the agency decision in whole or in part," but "*shall* reverse or remand the case for further proceedings" if the court finds error in the agency decision. Tex. Gov't Code § 2001.174(1)–(2) (emphasis added). When a case is remanded to the agency under section 2001.174, the suit for judicial review is resolved by a final judgment, and the district court no longer has jurisdiction. Under section 2001.174, a court cannot remand the case to the agency *while* simultaneously retaining jurisdiction over the case solely to maintain the temporary injunction with a trial setting. When the court remands the case to the agency, that is a final determination. *See* Tex. Gov't Code § 2001.174.

Alternatively, Texas Government Code section 2001.175(c) allows

the court to issue an interlocutory order for additional evidence, but only upon application by a party:

> A party may apply to the court to present additional evidence. If the court is satisfied that the additional evidence is material and that there were good reasons for the failure to present it in the proceeding before the state agency, the court may order that the additional evidence be taken before the agency on conditions determined by the court. The agency may change its findings and decision by reason of the additional evidence and shall file the additional evidence and any changes, new findings, or decisions with the reviewing court.

Tex. Gov't Code § 2001.175(c). Upon application of a party, the trial court could have ordered that the additional evidence be taken before the agency on conditions determined by the court. However, no party in this case requested additional evidence or made a showing that the evidence was material. And, the court did not reference section 2001.175(c) in the order. As written, the court's order does not invoke 2001.175(c). The trial court had no authority to remand the case for further proceedings without a full hearing on the merits. The remand paragraph of the order must be reversed and struck from the order as an abuse of discretion.

## II. The UDJA declaratory claims are barred as a redundant remedy and must be dismissed.

TLTA's UDJA claim is a redundant remedy because the APA provides the same relief in either TLTA's suit for judicial review under

the Texas Insurance Code section 36.201 or rule challenge under Texas Government Code section 2001.038. C.R. 144–48. Sovereign immunity from suit bars an action against the state unless the state expressly consents to the suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The party suing the governmental entity must establish the state's consent to suit, which may be alleged either by reference to a statute or to express legislative permission. *Id.*; *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *see Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000). It is a well-established rule that for the Legislature to waive the state's sovereign immunity, it must do so by clear and unambiguous language. Tex. Gov't Code § 311.034; *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980); *see Miranda*, 133 S.W.3d at 226–27. "A party who sues the State must have an independent waiver of immunity from suit for each claim in the suit." *State v. Sledge*, 36 S.W.3d 152, 156 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

The only statutory basis for TLTA's suit is under Texas Insurance Code sections 36.201–.205, which provides a limited waiver of sovereign immunity for judicial review of the commissioner's order under the APA procedures; and under Texas Government Code section 2001.038, which

contains a limited waiver of sovereign immunity to the extent of creating a cause of action for declaratory relief regarding the "validity" or "applicability" of a "rule," as defined under the APA. However, "the UDJA does not provide a general waiver of sovereign immunity for claims within its scope, only a limited waiver encompassing, of chief importance here, claims against the State or its agencies to challenge the 'validity' of a statute." *Tex. Dep't of State Health Services v. Balquinta*, 429 S.W.3d 726, 746 (Tex. App.—Austin 2014, pet. dism'd). "[T]he UDJA does not alter the scope of a trial court's jurisdiction, but is merely a procedural device for deciding cases already within a court's jurisdiction." *Id.* (internal quotations omitted). The UDJA does not provide an independent basis for the court's jurisdiction and is barred as a redundant remedy.

The redundant-remedies doctrine provides that "courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 79 (Tex. 2015). "Where a statute provides a method for attack on a [Board] order, an action for declaratory judgment does not lie." *Tex. Emp. Comm'n v. Child, Inc.*, 738 S.W.2d 56,

58 (Tex. App.—Austin 1987, writ denied) (citing *R.R. Comm'n v. Home Transp. Co.*, 670 S.W.2d 319, 326 (Tex. App.—Austin 1984, no writ)). The concept of redundant remedies "holds essentially that where a claimant has invoked a statutory means of attacking an agency order, a trial court lacks jurisdiction over an additional claim under the UDJA that would merely determine the same issues and provide what is substantively the same relief that would be provided by the other statutory remedy." *Balquinta*, 429 S.W.3d at 746. Here, judicial review of the Commissioner's decision will resolve the same controversy sought to be resolved by declaratory judgment. *See Gonzalez v. Tex. Med. Bd.*, No. 03-22-00205-CV, 2023 WL 7134982, at *10 (Tex. App.—Austin Oct. 31, 2023, pet. granted) ("These claims all could have been brought under the APA in a timely filed petition for judicial review of the cease-and-desist order and are thus redundant."). Thus, the claim for declaratory relief is merely incidental to the suit for judicial review. TLTA's UDJA claim is barred as a redundant remedy and must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION & PRAYER

Appellants Texas Department of Insurance and Commissioner

Cassie Brown respectfully ask the Court to:

1.    Reverse the trial court's order granting the temporary injunction with respect to and by striking from the order the following declarations:

"After considering the evidence and arguments of counsel, the Court FINDS Defendants did not strictly comply with the rulemaking requirements of Tex. Insurance Code section 2703.202, subdivision (c), in connection with the issuance of Commissioner's February 6, 2025 order number 2025-9125 (Commissioner's Order 2025-9125)."

"IT IS THEREFORE ORDERED that Plaintiff's Petition for Review of Commissioner's Order 2025-9125 is GRANTED."

"IT IS FURTHER ORDERED that this matter is hereby REMANDED to the Texas Department of Insurance for reconsideration of Commissioner's Order 2025-9125, and for further proceedings as may be necessary before that agency, to include but is not limited to additional income and expenses data used to fix premium rates for the year of 2023 and beyond, which were incomplete or previously unavailable and as recognized by the Commissioner's Order in her Findings of Fact 12(d) and its attendant footnote 2."

2.    Reverse the denial of the plea to the jurisdiction only as to the redundant UDJA claim, thereby dismissing the claim from TLTA's lawsuit.

3.    Remand the case back to the trial court for a full hearing on the merits.

4.    Appellants request such other and further relief to which they

show themselves justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

*/s/Rosalind L. Hunt*
ROSALIND L. HUNT
State Bar No. 24067108
Assistant Attorney Generals
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4166
Facsimile: (512) 320-0167
Rosalind.Hunt@oag.texas.gov

ATTORNEYS FOR APPELLANTS
TEXAS DEPARTMENT OF INSURANCE AND
COMMISSIONER CASSIE BROWN

## CERTIFICATE OF COMPLIANCE

I certify that the submitted brief complies with Rule 9 of the Texas Rules of Appellate Procedure and the word count of this document is 4,046. The word processing software used to prepare this filing and calculate the word count of the document is Microsoft Word for Office 365.

Date: August 21, 2025.

*/s/Rosalind L. Hunt*
Rosalind L. Hunt
Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2025, a true and correct copy of the above and forgoing document has been served to the following attorneys of record via electronic service and/or electronic mail:

RAY C. CHESTER
State Bar No. 04189065
ANDREW M. EDGE
State Bar No. 24071446
MCGINNIS LOCHRIDGE LLP
1111 W. 6th Street, Bldg. B, Suite 400
Austin, Texas 78703
Telephone: (512) 495-6000
Facsimile:  (512) 495-6093
rchester@mcginnislaw.com
aedge@mcginnislaw.com

ATTORNEYS FOR APPELLEE

*/s/Rosalind L. Hunt*
Rosalind L. Hunt
Attorney for Appellants

## INDEX OF APPENDICES

Order Granting Plaintiff's First Amended Application for Temporary Injunction (C.R. 168–70) ........................................................................ A

Order Overruling Texas Department of Insurance and Cassie Brown's First Amended Plea to the Jurisdiction (C.R. 171) ................................ B

Official Order of the Texas Commissioner of Insurance, No. 2025-9125 (C.R. 25–36) ............................................................................... C

# APPENDIX A

CAUSE NO. D-1-GN-25-001663

| | | |
|---|---|---|
| TEXAS LAND TITLE ASSOCIATION, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF INSURANCE | § | TRAVIS COUNTY, TEXAS |
| AND CASSIE BROWN, IN HER | § | |
| CAPACITY AS COMMISSIONER OF THE | § | |
| TEXAS DEPARTMENT OF INSURANCE, | § | |
| | § | |
| *Defendants*. | § | |
| | § | 345TH JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFF'S FIRST AMENDED APPLICATION FOR TEMPORARY INJUNCTION

On May 27-28, 2025, the Court heard Plaintiff's Original Petition and Application for Temporary Injunction filed on March 6, 2025, and as amended on May 28, 2025, solely to include a verification as provided in Plaintiff's First Amended Original Petition and Application for Temporary Injunction.

The Court FINDS that Defendants waived the insufficiency of verification to support Plaintiff's original application for injunctive relief, by Defendants' failure to timely object thereto before the Court heard evidence pertaining to the requested injunctive relief. *Russell v. City of Dallas*, No. 05-13-00061-CV, 2014 Tex. App. LEXIS 5339, at * 9–10 (Tex. App.—Dallas 2014, pet. denied, cert. denied 574 U.S. 1048 (2014)).

After considering the evidence and arguments of counsel, the Court FINDS Defendants did not strictly comply with the rulemaking requirements of Texas Insurance Code section 2703.202, subdivision (c), in connection with the issuance of Commissioner's February 6, 2025 order number 2025-9125 (Commissioner's Order 2025-9125).

ORDER GRANTING PLAINTIFF'S FIRST AMENDED APPLICATION FOR TEMPORARY INJUNCTION
Cause No. D-1-GN-25-001663

Page 1 of 3

The Court FURTHER FINDS that Commissioner's Order 2025-9125 dictates a new set of basic premium rates as set forth in the "Exhibit A" attached to that order, which will take effect on July 1, 2025, and its application to Plaintiff interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

IT IS THEREFORE ORDERED that Plaintiff's Petition for Review of Commissioner's Order 2025-9125 is GRANTED.

IT IS FURTHER ORDERED that this matter is hereby REMANDED to the Texas Department of Insurance for reconsideration of Commissioner's Order 2025-9125, and for further proceedings as may be necessary before that agency, to include but is not limited to additional income and expenses data used to fix premium rates for the year of 2023 and beyond, which were incomplete or previously unavailable and as recognized by the Commissioner's Order in her Findings of Fact 12(d) and its attendant footnote 2.

The Court FURTHER FINDS that Plaintiff is without adequate remedies at law, absent a temporary injunction of Commissioner's Order 2025-9125 at this time.

IT IS THEREFORE ORDERED that Plaintiff's First Amended Application for Temporary Injunction is GRANTED.

IT IS ORDERED that Defendants are hereby ENJOINED from enforcing Commissioner's Order 2025-9125, and that order is hereby STAYED, pending final disposition of this matter. This injunction is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

IT IS FURTHER ORDERED that this cause is hereby set for trial on the merits to commence on December 1, 2025, and as the Court may further order.

IT IS FURTHER ORDERED that this Order not be effective unless and until Plaintiff executes and files with the Clerk a bond, in conformity with the law, payable to Defendants in the amount of $2,500.

SIGNED on May 30, 2025,

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 07/02/2025 08:27:08

VELVA L. PRICE

By Deputy

ORDER GRANTING PLAINTIFF'S FIRST AMENDED APPLICATION                    Page 3 of 3
FOR TEMPORARY INJUNCTION
Cause No. D-1-GN-25-001663

# APPENDIX B

CAUSE NO. D-1-GN-25-001663

| | | |
|---|---|---|
| TEXAS LAND TITLE ASSOCIATION, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF INSURANCE | § | TRAVIS COUNTY, TEXAS |
| AND CASSIE BROWN, IN HER | § | |
| CAPACITY AS COMMISSIONER OF THE | § | |
| TEXAS DEPARTMENT OF INSURANCE, | § | |
| | § | |
| *Defendants*. | § | |
| | § | 345TH JUDICIAL DISTRICT |

## ORDER OVERRULING TEXAS DEPARTMENT OF INSURANCE AND CASSIE BROWN'S FIRST AMENDED PLEA TO THE JURISDICTION

On May 27-28, 2025, the Court heard Texas Department of Insurance and Cassie Brown's First Amended Plea to the Jurisdiction filed on May 20, 2025 (Plea).

After considering the evidence and arguments of counsel, the Court FINDS that it has subject-matter jurisdiction under Texas Insurance Code section 36.201 and Texas Government Code section 2001.038, subdivision (a), to conduct judicial review of the Commissioner's actions as alleged in Plaintiff's Original Petition and Application for Temporary Injunction filed on March 6, 2025, and as amended on May 28, 2025. The Court therefore FINDS that Defendants' sovereign immunity has been statutorily waived.

IT IS THEREFORE ORDERED that the Plea is OVERRULED.

SIGNED on May 30, 2025,

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 07/02/2025 08:27:08

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

# Appendix C

No. **2025-9125**

## Official Order
## of the
## Texas Commissioner of Insurance

### Date: 02/06/2025

**Subject Considered:**

Title Insurance Basic Premium Rates Hearing
Docket No. 2851
Petition Nos. P-1124-02 and P-1124-03

**General Remarks and Official Action Taken:**

The subjects of this order are the two requests to consider title insurance basic premium rates under Insurance Code § 2703.202 filed by the Texas Land Title Association (TLTA) and the Office of Public Insurance Counsel (OPIC). The commissioner sets the title insurance basic premium rates by order following a public hearing. After consideration of each matter presented in writing and orally at a public hearing, the commissioner fixes a new title insurance premium rate.

The following findings of fact and conclusions of law are adopted.

### Findings of Fact

1.    On September 16, 2024, the Texas Department of Insurance (TDI) published its 2024 Title Rate Report on its website. The report provides rate indications based on title experience data ending in calendar year 2022 ranging from −4.9% to −15.4%.

2.    On November 1, 2024, TDI received TLTA's request to consider the title insurance basic premium rates. TLTA proposed that there be no change in the rates. Alternatively, if rates are decreased, TLTA proposed that the decrease should not be more than −1.0% and effective on July 1, 2025. In a supplemental submission provided to TDI on January 14, 2025, TLTA concluded that a rate decrease in the

Page 25

range of 0.0% to −4.7% is reasonable, but in light of data it collected on a sampling of 37 title agents' 2023 experience, suggested that a 0.0% change is most appropriate.

3.    TDI assigned TLTA's request for a public hearing Petition No. P-1124-02.

4.    TDI issued a notice of public hearing on TLTA's request. The notice was posted on TDI's website on November 8, 2024, and published in the November 22, 2024, issue of the *Texas Register* (49 TexReg 9608).

5.    On November 12, 2024, TDI received OPIC's request to consider the title insurance basic premium rates. OPIC requested that TDI hold the hearing requested by TLTA, but disagreed with TLTA that the basic premium rates should not be changed. In a supplemental submission provided to TDI on January 22, 2025, OPIC concluded that a rate decrease in the range of −8.9% to −19.0% is indicated based on historical experience and is actuarially sound.

6.    TDI assigned OPIC's request for a public hearing Petition No. P-1124-03.

7.    Because of a forecasted snowstorm for Austin and much of the state, the commissioner postponed the hearing that was initially scheduled for January 21, 2025, until January 23, 2025, under Government Code § 551.0411.

8.    On January 23, 2025, the commissioner conducted a public hearing under Insurance Code § 2703.202(c), under Docket No. 2851. Interested people attended the hearing and had the opportunity to present written and oral testimony. TLTA, OPIC, and TDI staff presented exhibits, analyses, and rate calculations summarizing and referencing the reports that each had previously submitted to the commissioner.

9.    Under Insurance Code § 2703.152, when fixing a premium rate, the commissioner must "consider all relevant income and expenses of title insurance companies and title insurance agents attributable to engaging in the business of title insurance." The premium rates must be "reasonable as to the public" and "nonconfiscatory as to title insurance companies and title insurance agents." Insurance Code § 2703.152.

Income and Expenses of Title Insurance Companies and Agents

10.    The reports from TLTA, OPIC, and TDI each included a description of the actuarial methods they used to determine whether a change to the basic premium rates is indicated.

11.    All three reports included rate indications determined using the loss ratio method. The loss ratio method takes into account the title industry's expense ratio, the loss and loss adjustment expense (LAE) ratio, the catastrophe loss provision, and the profit provision.[1]

    a.    To determine the expense ratio, the reports compiled data on expenses related to the business of title insurance and divided that by the amount of premium collected. The expense ratio provides for all reasonable costs associated with a title insurance policy other than profits and losses.

    b.    To determine the loss and loss adjustment expense ratio, the reports compiled data on losses and loss adjustment expenses and divided that by the amount of premium collected.

    c.    The catastrophe loss provision is selected to account for the possibility of the market experiencing widespread losses that are significantly higher than what has been experienced historically.

    d.    To determine the profit provision, the reports first determined a target cost of capital. Returns from investments are subtracted from the target cost of capital and then adjusted for the industry's premium-to-capital leverage ratio.

    e.    To determine the expense ratio, the loss and loss adjustment expense ratio, and the catastrophe loss provision, TLTA, OPIC, and TDI used data submitted to TDI under Insurance Code § 2703.153.

---

[1] The formula for the rate indication using the loss ratio method is:

$$[(L+E+C)/(1-P)] - 1$$

Where L = loss and loss adjustment expense ratio = losses and LAE/premium; E = expense ratio = expenses/premium; C = catastrophe loss provision; and P = underwriting profit provision = profit/premium.

12. The reports from TLTA, OPIC, and TDI each contained multiple rate indications using the loss ratio method. The various rate indications make up the reports' ranges. The main difference in the indications are from the profit provisions and experience periods used.

a. For the profit provision, TLTA used 12.0%, OPIC used 7.0%, and TDI used 11.0%. These differences are mainly from the values used for the target cost of capital and the size premium adjustments. OPIC asserts that Texas title insurance is less risky and less variable than the average line of property and casualty insurance, so a lower cost of capital is reasonable, and no size premium adjustment is needed.

b. OPIC and TDI provided indications that used 5-year, 10-year, 15-year, and 20-year experience periods; each ending in 2022. In general, a shorter period tends to be responsive to recent market conditions in the experience period, whereas a longer period tends to capture a broad spectrum of economic conditions.

c. TLTA's indications used a 3-year period ending in 2019, a 5-year period ending in 2019, and a 20-year period ending in 2022. TLTA stated its experience periods avoid giving too much weight to the pandemic periods of 2020–2022, which were outlier years.

d. TLTA also provided an indication using a standalone estimate of the 2023 expense ratio because it asserted that the available data through 2022 does not include the full impact from the downturn in the title insurance market that started in the fall of 2022. Because TDI has not received all 2023 data under Insurance Code § 2703.153,[2] TLTA surveyed 37 agents that it said make up about 50% of total Texas premiums and used that data to estimate the expense ratio for 2023.

e. TLTA also provided an indication using linear regression. It created a scatter plot of the expense ratio and retained premium data between 1998 and 2022 and then determined a line of best fit to estimate the expense ratio on the basis of on-level retained premiums.

---

[2] While the deadline to submit the data has passed as of the date of this order, TDI is working with agents and agencies that missed the deadline or that need to provide data corrections.

f. TDI and OPIC used the same experience periods, resulting in them using the same expense ratios, averaging 77.0%. TLTA's expense ratios were mostly higher, averaging 81.7%; this was attributable to the different experience periods and methods TLTA used.

g. The loss and loss adjustment expense ratios used by all parties were similar, 2.3% for TLTA and 2.0% for OPIC and TDI, since this ratio shows little volatility over the various experience periods.

h. For the catastrophe loss provision, all parties used 1.0%.

13. The various actuarial methods yielded the following results:

| Loss Ratio Methods | TLTA | OPIC | TDI |
|---|---|---|---|
| 5-year ending 2022 | | −19.0% | −15.4% |
| 10-year ending 2022 | | −15.6% | −11.8% |
| 15-year ending 2022 | | −12.5% | −8.6% |
| 20-year ending 2022 | −3.8% | −8.9% | −4.9% |
| 5-year ending 2019 | −4.6% | | |
| 3-year ending 2019 | −4.7% | | |
| Linear regression | −4.0% | | |
| 2023 estimate | 0.0% | | |
| *Overall range* | *0.0% to −4.7%* | *-8.9% to −19.0%* | *−4.9% to −15.4%* |

14. The commissioner has reviewed and evaluated all the information submitted in the TLTA, OPIC, and TDI reports. This information reflects the relevant income and expenses experienced by all title insurance companies and title insurance agents engaged in the business of title insurance in Texas.

Reasonable as to the Public

15. In recent history, the title industry's actual profit ratio has been consistently, and at times dramatically, above the target profit ratio used in setting the basic premium rates. The actual profit ratios earned by title agents and underwriters in Texas over different periods are as follows:

| Years of Data Included | Average Profit Ratio |
|---|---|
| 2003–2022 (20 years) | 17.5% |
| 2008–2022 (15 years) | 19.8% |
| 2013–2022 (10 years) | 24.6% |
| 2018–2022 (5 years) | 26.2% |
| 2015–2019 (5 years) | 22.2% |
| 2022 (1 year) | 26.6% |

16. While the housing market saw a downturn in late 2022, due in part to increases in mortgage rates and median home prices, the average rate of return was 26.6%. When you compare this with the profit provisions used in TLTA's (12.0%), OPIC's (7.0%), and TDI's (11.0%) actuarial analyses, it shows that even as the market declines, there is a sizeable difference between what is considered an acceptable target for profit levels and the actual profits the market has been experiencing.

17. Sustaining the current levels of profits in the current real estate market with the current levels of inflation would not be reasonable as to the public. Texans are being affected by housing affordability across the state. A reduction in title insurance basic premium rates would likely help bring the actual profit ratio closer to the target.

Nonconfiscatory as to Title Insurance Companies and Agents

18. A confiscatory rate is one that is too low to allow a regulated company to "not only recover its operating expenses, but also to realize reasonable returns on its investments."[3]

19. The commissioner did not receive "clear and convincing evidence"[4] that a reduction in rates would lead the average title insurance company or title insurance agent to experience insolvency or earn an unreasonable rate of return.

---

[3] *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 795 (Tex. App.—Austin 2008), citing *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307, 109 S.Ct. 609, 102 L.ED.2d 646 (1989); *Railroad Comm'n v. Houston Natural Gas Corp.*, 155 Tex. 502, 289 S.W.2d 559, 572 (1956).
[4] *Id.* at 795.

20. Between 2020 and 2022, the title industry in Texas experienced significant growth. The COVID pandemic and a dramatic reduction in interest rates led to an unprecedented increase in housing purchases and refinances.

21. To accommodate that increase, agencies have expanded, and more agents have entered the market. Since 2019, the number of licensed title agents in Texas has grown by 29%—from 614 agents in 2019 to 794 agents in 2024.

22. Industry-wide premiums went from $2.27 billion in 2019, to $2.69 billion in 2020, and $3.69 billion in 2021. In 2022, there was a slight decline to $3.38 billion, and 2023 saw a return to pre-pandemic premium levels at $2.38 billion. While the market has declined, the industry is still collecting significant premium.

23. While the rates must be nonconfiscatory for the industry, that does not mean that every licensed agent and agency should expect the same level of profitability. The average profit must be reasonable, but, as OPIC noted in its report, that is likely to result in some agents making large profits while others do not. Irrespective of the basic premium rate, the downturn in the market may result in underperforming agents seeing a lack of profitability.

24. Aside from TLTA's method that included its sampling of 2023 data, each of the methods from TLTA, OPIC, and TDI indicated a reduction in rates from −4.7% to −19.0%. Those methods used profit provisions of 12.0%, 7.0%, and 11.0%, respectively; and each entity's report asserts that its respective profit provision would be a reasonable rate of return.

**Conclusions of Law**

1. The commissioner has jurisdiction over this matter under Insurance Code §§ 31.021, 2501.001–2501.008, 2551.003, and 2703.001–2703.208.

2. TDI gave proper and timely notice of the January 21, 2025, public hearing required by Insurance Code § 2703.203 and of its continuation to January 23, 2025, under Government Code § 551.0411.

3. Insurance Code § 2501.002 states that the purpose of the Texas Title Insurance Act is "to completely regulate the business of title insurance . . . to protect consumers and purchasers of title insurance policies and provide adequate and reasonable rates of return for title insurance companies and title insurance agents."

Page 31

4. Insurance Code § 2703.151 requires the commissioner to fix and promulgate the premium rates to be charged by title insurance companies and title insurance agents.

5. Insurance Code § 2703.152 states that when fixing premium rates, the commissioner must "consider all relevant income and expenses of title insurance companies and title insurance agents attributable to engaging in the business of title insurance." The premium rates must be "reasonable as to the public and nonconfiscatory as to title insurance companies and title insurance agents."

6. After considering the data collected under Insurance Code § 2703.153 and the reports provided by TLTA, OPIC, and TDI staff, the commissioner has determined that a 10% reduction in the title insurance basic premium rates takes all relevant income and expenses into account, is reasonable to the public, and is nonconfiscatory to title insurance companies and agents. This reduction will save Texas consumers an estimated $238 million per year.

## Order

It is ordered that, effective July 1, 2025, title insurance companies and title insurance agents must use the basic premium rates reflected in Exhibit A.

Signed by:

FC5D7EDDFFBB4F8…  _____

Cassie Brown
Commissioner of Insurance

Recommended and reviewed by:

Signed by:

70ABE377123E401…  _____

Mark Worman, Deputy Commissioner

Signed by:

5DAC5618E3C74D4…  _____

Jessica Barta, General Counsel

# Exhibit A



# TEXAS TITLE INSURANCE BASIC PREMIUM RATES

## Rates Effective July 1, 2025

| Policy Face Amount Up to and Including | Basic Premium | Policy Face Amount Up to and Including | Basic Premium | Policy Face Amount Up to and Including | Basic Premium | Policy Face Amount Up to and Including | Basic Premium |
|---|---|---|---|---|---|---|---|
| $25,000 | $295 | $44,000 | $410 | $63,000 | $525 | $82,000 | $640 |
| 25,500 | 298 | 44,500 | 413 | 63,500 | 528 | 82,500 | 644 |
| 26,000 | 302 | 45,000 | 417 | 64,000 | 532 | 83,000 | 648 |
| 26,500 | 304 | 45,500 | 419 | 64,500 | 535 | 83,500 | 650 |
| 27,000 | 306 | 46,000 | 422 | 65,000 | 537 | 84,000 | 653 |
| 27,500 | 309 | 46,500 | 426 | 65,500 | 540 | 84,500 | 656 |
| 28,000 | 312 | 47,000 | 428 | 66,000 | 544 | 85,000 | 659 |
| 28,500 | 315 | 47,500 | 430 | 66,500 | 548 | 85,500 | 662 |
| 29,000 | 320 | 48,000 | 435 | 67,000 | 551 | 86,000 | 664 |
| 29,500 | 322 | 48,500 | 438 | 67,500 | 552 | 86,500 | 669 |
| 30,000 | 325 | 49,000 | 441 | 68,000 | 555 | 87,000 | 672 |
| 30,500 | 328 | 49,500 | 444 | 68,500 | 559 | 87,500 | 674 |
| 31,000 | 331 | 50,000 | 446 | 69,000 | 562 | 88,000 | 677 |
| 31,500 | 334 | 50,500 | 449 | 69,500 | 564 | 88,500 | 680 |
| 32,000 | 337 | 51,000 | 451 | 70,000 | 568 | 89,000 | 684 |
| 32,500 | 340 | 51,500 | 455 | 70,500 | 572 | 89,500 | 686 |
| 33,000 | 343 | 52,000 | 459 | 71,000 | 575 | 90,000 | 689 |
| 33,500 | 347 | 52,500 | 463 | 71,500 | 577 | 90,500 | 692 |
| 34,000 | 349 | 53,000 | 464 | 72,000 | 580 | 91,000 | 696 |
| 34,500 | 353 | 53,500 | 468 | 72,500 | 583 | 91,500 | 699 |
| 35,000 | 356 | 54,000 | 471 | 73,000 | 586 | 92,000 | 701 |
| 35,500 | 358 | 54,500 | 473 | 73,500 | 589 | 92,500 | 705 |
| 36,000 | 361 | 55,000 | 476 | 74,000 | 592 | 93,000 | 707 |
| 36,500 | 365 | 55,500 | 479 | 74,500 | 596 | 93,500 | 711 |
| 37,000 | 367 | 56,000 | 483 | 75,000 | 599 | 94,000 | 712 |
| 37,500 | 371 | 56,500 | 486 | 75,500 | 601 | 94,500 | 716 |
| 38,000 | 374 | 57,000 | 489 | 76,000 | 604 | 95,000 | 721 |
| 38,500 | 377 | 57,500 | 492 | 76,500 | 607 | 95,500 | 724 |
| 39,000 | 379 | 58,000 | 496 | 77,000 | 610 | 96,000 | 725 |
| 39,500 | 383 | 58,500 | 498 | 77,500 | 613 | 96,500 | 728 |
| 40,000 | 385 | 59,000 | 500 | 78,000 | 617 | 97,000 | 732 |
| 40,500 | 390 | 59,500 | 504 | 78,500 | 620 | 97,500 | 735 |
| 41,000 | 392 | 60,000 | 508 | 79,000 | 624 | 98,000 | 738 |
| 41,500 | 395 | 60,500 | 511 | 79,500 | 625 | 98,500 | 742 |
| 42,000 | 398 | 61,000 | 514 | 80,000 | 628 | 99,000 | 744 |
| 42,500 | 401 | 61,500 | 516 | 80,500 | 632 | 99,500 | 747 |
| 43,000 | 403 | 62,000 | 519 | 81,000 | 635 | 100,000 | 749 |
| 43,500 | 407 | 62,500 | 523 | 81,500 | 637 | | |

Title Basic Premium Calculation for Policies in
Excess of $100,000

Using the table below, apply these steps to determine basic premium for policies above $100,000:

Step 1        In column (1), find the range that includes the policy's face value.
Step 2        Subtract the value in column (2) from the policy's face value.
Step 3        Multiply the result in Step 2 by the value in column (3), and round to the nearest dollar.
Step 4        Add the value in column (4) to the result of the value from Step 3.

(See examples following the table.)

Title Basic Premium Calculation for Policies in Excess of $100,000

| (1) Policy Range | (2) Subtract | (3) Multiply by | (4) Add |
|---|---|---|---|
| [$100,001 - $1,000,000] | 100,000 | 0.00474 | $749 |
| [$1,000,001 -$5,000,000] | 1,000,000 | 0.00390 | $5,018 |
| [$5,000,001 - $15,000,000] | 5,000,000 | 0.00321 | $20,606 |
| [$15,000,001 - $25,000,000] | 15,000,000 | 0.00229 | $52,736 |
| [$25,000,001 - $50,000,000] | 25,000,000 | 0.00137 | $75,596 |
| [$50,000,001 - $100,000,000] | 50,000,000 | 0.00124 | $109,796 |
| [Greater than $100,000,000] | 100,000,000 | 0.00112 | $171,896 |

Examples for Policies in Excess of $100,000

Example 1:
(1) Policy is $268,500
(2) Subtract $100,000 ==> $268,500 -$100,000 ==> Result = $168,500
(3) Multiply by 0.00474==> $168,500 x 0.00474 ==> Result = $799
(4) Add $749 ==> $799 + $749 ==> Final Result = $1,548

Example 2:
(1) Policy is $4,826,600
(2) Subtract $1,000,000 ==> $4,826,600 -$1,000,000 ==> Result = $3,826,600
(3) Multiply by 0.00390 ==> $3,826,600 x 0.00390 ==> Result = $14,924
(4) Add $5,018 ==> $14,924 + $5,018 ==> Final Result = $19,942

Example 3:
(1) Policy is $10,902,800
(2) Subtract $5,000,000 ==> $10,902,800 -$5,000,000 ==> Result = $5,902,800
(3) Multiply by 0.00321 ==> $5,902,800 x 0.00321 ==> Result = $18,948
(4) Add $20,606 ==> $18,948 + $20,606 ==> Final Result = $39,554

Example 4:
(1) Policy is $17,295,100
(2) Subtract $15,000,000 ==> $17,295,100 -$15,000,000 ==> Result = $2,295,100
(3) Multiply by 0.00229==> $2,295,100 x 0.00229 ==> Result = $5,256
(4) Add $52,736 ==> $5,256 + $52,736 ==> Final Result = $57,992

Example 5:
(1) Policy is $39,351,800
(2) Subtract $25,000,000 ==> $39,351,800 - $25,000,0 00 ==> Result = $14,351,800
(3) Multiply by 0.00137 ==> $14,351,800 x 0.00137 ==> Result = $19,662
(4) Add $75,596 ==> $19,662 + $75,596 ==> Final Result = $95,258

Example 6:
(1) Policy is $75,300,200
(2) Subtract $50,000,000 ==> $75,300,200 -$50,000,000 ==> Result = $25,300,200
(3) Multiply by 0.00124 ==> $25,300,200 x 0.00124 ==> Result = $31,372
(4) Add $109,796 ==> $31,372 + $109,796 ==> Final Result = $141,168

Example 7:
(1) Policy is $151,250,300
(2) Subtract $100,000,000 ==> $151,250,300 - $100,000,000 ==> Result $51,250,300
(3) Multiply by 0.00112 ==> $51,250,300 x 0.00112==>Result = $57,400
(4) Add $171,896 ==> $57,400 + $171,896 ==> Final Result = $229,296



# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennifer Foster on behalf of Rosalind Hunt
Bar No. 24067108
jennifer.foster@oag.texas.gov
Envelope ID: 104673679
Filing Code Description: Brief Requesting Oral Argument
Filing Description: TDI Appellants Brief w Appendix
Status as of 8/21/2025 12:35 PM CST

Associated Case Party: Texas Land Title Association

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kim McBride | | kmcbride@mcginnislaw.com | 8/21/2025 12:09:39 PM | SENT |
| Ray Chester | | rchester@mcginnislaw.com | 8/21/2025 12:09:39 PM | SENT |
| Drew Edge | | aedge@mcginnislaw.com | 8/21/2025 12:09:39 PM | SENT |

Associated Case Party: Texas Department of Insurance

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rosalind Hunt | | rosalind.hunt@oag.texas.gov | 8/21/2025 12:09:39 PM | SENT |
| Jennifer Foster | | Jennifer.Foster@oag.texas.gov | 8/21/2025 12:09:39 PM | SENT |
| Meridith Fischer | | Meridith.Fischer@oag.texas.gov | 8/21/2025 12:09:39 PM | SENT |
| John Grey | | John.Grey@oag.texas.gov | 8/21/2025 12:09:39 PM | SENT |